# JAMES *v.* BOWMAN.

**APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF KENTUCKY.**

No. 213. Argued March 16, 1903.—Decided May 4, 1903.

Although section 5507, Rev. Stat., which provides for the punishment of individuals who hinder, control or intimidate others from exercising the right of suffrage guaranteed by the Fifteenth Amendment, purports on its face to be an exercise of the power granted to Congress by the Fifteenth Amendment, it cannot be sustained as an appropriate exercise of such power. That Amendment relates solely to action by the United States or by any State and does not contemplate wrongful individual acts. While Congress has ample power in respect to elections of Representatives to Congress, § 5507 cannot be sustained under such general power because Congress did not act in the exercise of such power.

On its face the section is clearly an attempt to exercise power supposed to be conferred by the Fifteenth Amendment in respect to all elections, State and Federal, and not in pursuance of the general control by Congress over particular elections. It would be judicial legislation for this court to change a statute enacted to prevent bribery of persons named in the Fifteenth Amendment at all elections, to one punishing bribery of any voter at certain elections.

Congress has the power to punish bribery at Federal elections but it is all important that a criminal statute should define clearly the offence which it purports to punish, and that when so defined it should be within the limits of the power of the legislative body enacting it.

In December, 1900, an indictment was found by the United States District Court for the District of Kentucky against the appellee, Henry Bowman, and one Harry Weaver, based upon section 5507 of the Revised Statutes of the United States. The indictment charged in substance that certain " men of African descent, colored men, negroes, and not white men," being citizens of Kentucky and of the United States, were, by means of bribery, unlawfully and feloniously intimidated and prevented from exercising their lawful right of voting at a certain election held in the Fifth Congressional District of Kentucky on the 8th day of November, 1898, for the election of a Representative in the Fifty-sixth Congress of the United States.

No allegation is made that the bribery was because of the race, color or previous condition of servitude of the men bribed. The appellee, Henry Bowman, having been arrested and held in default of bail, sued out a writ of *habeas corpus* on the ground of the unconstitutionality of section 5507. The District Judge granted the writ, following reluctantly the decision of the Circuit Court of Appeals for the Sixth Circuit, in *Lackey* v. *United States*, 46 C. C. A. 189; 107 Fed. Rep. 114. From that judgment the government has taken this appeal.

Section 5507 is as follows:

"Sec. 5507. Every person who prevents, hinders, controls, or intimidates another from exercising, or in exercising the right of suffrage, to whom that right is guaranteed by the Fifteenth Amendment to the Constitution of the United States, by means of bribery or threats of depriving such person of employment or occupation, or of ejecting such person from a rented house, lands, or other property, or by threats of refusing to renew leases or contracts for labor, or by threats of violence to himself or family, shall be punished as provided in the preceding section."

The Fifteenth Amendment provides:

"Sec. 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.

"Sec. 2. The Congress shall have power to enforce this article by appropriate legislation."

*Mr. Solicitor General Hoyt* for appellants.

The indictment was for an offence committed at a Federal election, therefore the only question in the case is as to the constitutionality of section 5507, Rev. Stat., with respect to such elections. The decision of the Circuit Court of Appeals for the Sixth Circuit in *Lackey* v. *United States*, 107 Fed. Rep. 114, holding that section 5507 was invalid as applied to state elections, has no application, even if it were controlling in this court. The source of the power, and the extent of the power of Congress in each case is quite different. The authority of

Congress over Federal elections is derived primarily from Article I, sec. 4, of the Constitution. This authority is "plenary and paramount," and under the decisions of this court extends to the protection of persons entitled to vote at such elections against the unlawful acts of individuals as well as officers of election, the right to vote for a member of Congress being itself founded upon the Constitution. *Ex parte Siebold,* 100 U. S. 371; *Ex parte Clarke,* 100 U. S. 399; *Ex parte Yarbrough,* 110 U. S. 651; *In re Coy,* 127 U. S. 731. On the other hand, the power of Congress over state elections is derived exclusively from the Fifteenth Amendment, and is limited to appropriate legislation to enforce that amendment.

It may be observed, however, as fortifying the argument in the abstract, that the *general* right of suffrage, at state as well as Federal elections, is contemplated by the law if the crucial discrimination occurs, because—

1. The Constitution so indicates,

(*a*) The language of the Fifteenth Amendment being unqualified, " the right . . . . . *to vote;* "

(*b*) The language of section 2 of the Fourteenth Amendment, on an associated subject and showing a cognate intention, including elections for state as well as Federal officers.

2. The statutes shows that intention: *e. g.,* section 2004 obviously applies to state elections and officers, and section 2010, although now repealed by the act of February 8, 1894, 28 Stat. 36, may be cited to show how the original intent, still apparent in section 2004, was followed up in other provisions of the act of 1870.

3. The clear inference from decisions of this court is to the same effect.

In the *Yarbrough case,* 110 U. S. 664, when the court said: "The Fifteenth Amendment of the Constitution . . . clearly shows that the right of suffrage was considered to be of supreme importance to the national government," etc., it is evident from the paragraphs following that the learned judge who delivered the opinion had passed on from exclusive consideration of the right to vote for a member of Congress.

But the questions as to the constitutionality of section 5507

in respect of Federal elections, and its application or constitutionality as to state elections, are distinct and separable. The validity of the statute in the one case cannot be made to depend upon its validity, or the circumstances which would control its validity, in the other case. It cannot be doubted that a law containing no substantive provision beyond the power of Congress—no provision clearly encroaching upon a field outside the competency of Congress—is none the less constitutional because there are occasions (in this instance, state elections) with respect to which its application might be challenged.

In *United States* v. *Reese*, 92 U. S. 214, the court merely held that a general statute relating to state as well as Federal elections, but which contained no reference to the Fifteenth Amendment, or to acts committed because of the race, color, or previous condition of the voter, when considered solely with reference to the power of Congress under that amendment, was not "appropriate legislation" for its enforcement. The court did not say, or intimate, that the statute was unconstitutional as an exercise of the power of Congress over Federal elections under the fourth section of the First Article of the Constitution. On the contrary, it expressly avoided that question. This itself is a complete answer to appellee's contention, as it shows that, in a case arising under a general statute, it is not necessary to consider the validity of the statute from any other point of view than that presented by the record. That the court in the *Reese* case, would have sustained the statute with respect to Federal elections, was affirmed by the Circuit Court in *United States* v. *Munford*, 16 Fed. Rep. 223, where the same statute, as incorporated into the Revised Statutes, was upheld in regard to such elections.

In the *Trade-Mark Cases*, 100 U. S. 82, the court held void an act of Congress dealing with the subject of trade-marks generally, because the power of Congress over trade-marks was limited to those used in interstate commerce. The principle of both the *Reese* and *Trade-Mark* cases is simply that, where Congress possesses only a special or limited power over a given subject, it must appear, in the act itself, or from its essential

nature, that it is legislating with regard to that subject and within the limits of the power granted. But the power of Congress over Federal elections is absolute; though its power with respect to state elections is limited. A general act relating to elections should therefore be construed to relate to Federal elections over which Congress has general control. If such a statute would be invalid as applied to state elections, and such invalidity would affect the entire statute, the intention of Congress to go beyond its jurisdiction must be clearly and explicitly shown. In the present case, the application of the statute to state elections is a matter of construction only, and, under well settled principles, that construction should be rejected, if it would have the result contended for.

In a case arising under section 5507 at a Federal election, it cannot be said, as was said in the *Reese* case (where the acts in question were committed at a state election), that section 5507 provides for an offence not within the jurisdiction of Congress. The power of Congress to punish bribery *per se* at a Federal election, without regard to motive, cannot be disputed. The court would not, therefore, be called upon in such a case, to alter or amend the statute so as to make it relate to an offence within the control of Congress. Whether section 5507 relate to bribery pure and simple, or to bribery committed because of the race, color, or previous condition of the voter, it is entirely within the power of Congress over Federal elections. The power to punish bribery *per se* being conceded, no question can be raised as to the power to punish bribery for any cause. The greater power necessarily includes the less.

*Mr. Swager Sherley*, with whom *Mr. W. B. Dixon* was on the brief, for appellee.

I. Congress has power to control Federal elections and to make punishable offences committed against the suffrage at such elections, irrespective of any power derived from the Fifteenth Amendment. *Ex parte Siebold,* 100 U. S. 375 ; *Ex parte Clarke,* 100 U. S. 399. In these cases Mr. Justice Bradley held sections 5515 and 5522 constitutional and in emphatic language declared the power of Congress to regulate and control Federal elections

and make punishable offences committed at such elections. Such power in Congress was not rested upon the Fifteenth Amendment, but on the provisions relative to the election of Representatives and the broad power of protecting the sources of its own existence. In *Ex parte Yarbrough*, 110 U. S. 651, and *Logan* v. *United States*, 144 · U. S. 263, these cases were approved and followed, · and so far as the actual facts decided, the court went a step further and held an ·indictment under §§ 5508 and 5520 found against an individual citizen, not an election officer, to be good.

II. The Fifteenth Amendment is the sole source of power whereby Congress is vested · with the right to legislate as to · state elections, but it is in addition to this a curb on the power of Congress to legislate as to Congressional elections. ` By its very terms it applies both to the Federal and state governments. What is prohibited to one is also prohibited to the other. ·The effect is to both enlarge and curtail Congressional power.

The second clause of the Fifteenth Amendment provides that " the Congress shall have the power to enforce this article by appropriate legislation." Now, in order for legislation making penal acts against the suffrage to be appropriate legislation under this amendment, such acts must be committed on account of race, color, or previous condition of servitude, and must be committed by the State or some agent of the State clothed with state power, though not necessarily acting within or in accordance with such state power. So far as this amendment is concerned, and we are now to be considered as limiting ourselves to it, the same would be true as to the United States and its officers or agents. *United States* v. *Reese*, 92 U. S. 214; *United States* v. *Cruikshank*, 1 Woods, 308; *S. C.*, 92 U. S. 555; *Minor* v. *Happersett*, 21 Wall. 178.

The Circuit Court of Appeals for the Sixth Circuit has just rendered a decision involving these questions in the case of *Karem* v. *United States*. The opinion has not yet been reported in any publication, ·but we have received a record copy from which we quote. Karem, with certain other persons, was indicted in the District Court for the Western District of Kentucky for violation of § 5508, Rev. Stat. The indictment, in

substance, charged him with having conspired with others to injure, oppress, threaten, and intimidate certain negroes in the free exercise of the right of suffrage at a state election on account of their race, color, and previous condition of servitude. The court held that § 5508 did not embrace offences committed as a state election and reversed the case with instructions to sustain the demurrer to the indictment, quoting from *Slaughter House Cases,* 16 Wall. 36; *Ex parte Virginia,* 100 U. S. 339; *United States* v. *Cruikshank,* 92 U. S. 542; *United States* v. *Harris,* 106 U. S. 629, 638; *Virginia* v. *Rives,* 100 U. S. 313; *Civil Rights Case,* 109 U. S. 3, 11; *Chicago, B. & Q. R. R.* v. *Chicago,* 166 U. S. 226.

The court said: " Appropriate legislation grounded on this amendment is legislation which is limited to the subject of discrimination on account of race, color or condition. The act commonly known as the enforcement act, being the act of May 31, 1870, 16 Stat. 140, contained a number of sections which were plainly intended to enforce the provisions of the Fifteenth Amendment. These sections were the first, third, fourth and fifth. The first has been carried into the Revised Statutes as section 2004. The third, having been held unconstitutional, is dropped out: The fourth, in a somewhat changed form, is carried into the Revised Statutes as section 5506, and the fifth section is section 5507 of the Revised Statutes. The third, fourth and fifth sections of that act have been held to have been in excess of the jurisdiction of the Congress under the Fifteenth Amendment, and therefore null and void. The ground upon which this conclusion was reached was that neither section was confined in its operation to discriminations on account of race, color or previous condition of servitude, and were broad enough to cover wrongful acts both within and without the jurisdiction of Congress under this article. *United States* v. *Reese,* 92 U. S. 214; *Lackey* v. *United States,* 46 C. C. A. 189."

While the Circuit Court of Appeals in the *Karem* case was addressing itself to state elections, yet so far as the Fifteenth Amendment, and the power derived alone therefrom, the reasoning is equally applicable and valid as to Federal elections,

and as to limitations upon the United States government as well as the state governments.

III. It is not contended that there are any statutes relating to offences at Federal elections other than sections 5507 and 5508. Section 5508 is a conspiracy section and is not involved here. The whole case, then, narrows down to the question of whether Congress has constitutionally exercised the power given it over offences of bribery committed at Federal elections. That it has the power to make punishable such offences we conceded in the fore part of this brief.

That section 5507 was intended to be appropriate legislation under the Fifteenth Amendment only is, we think, apparent. It was so regarded by the District Judge below, and in the opinion of that court, referring to this section, it is said: " Is this appropriate legislation, and within the power of Congress, under section 2 of the Fifteenth Amendment?" And nowhere in that opinion is there any attempt to base the constitutionality of the section upon other clauses of the Constitution.

That the section is not appropriate legislation under the amendment, though based on it, is, we think, apparent. This was the exact question decided by the *Lackey* case, *supra*, and the reason there given was "that section 5507 is void, as including within its operation offences not grounded upon race, color, or previous condition of servitude."

Can, then, a statute that is based on the Fifteenth Amendment, and that is meant to apply to offences committed at all elections, Federal and state, but which is not appropriate legislation under that amendment, and therefore not constitutional as to state election offences, be limited by judicial construction to Federal elections and upheld by reference to powers granted Congress as to Federal elections only?

We believe the answer to this question is found in the following cases: *United States* v. *Reese*, 92 U. S. 214; *Trade-Mark Cases*, 100 U. S. 82; *United States* v. *Harris*, 106 U. S. 629.

Section 5507 is a very different section in its scope and purpose from section 5508. This latter section is a general law that applies to a conspiracy to injure, etc., any person in the

free exercise of a right secured to him by the Constitution and laws of the United States. It applies to all manner of rights other than those simply of suffrage. It is limited to a Federal right. No question could arise as to its constitutionality; the only question would be whether it applied to any given case, and since the statute is general and does not show that Congress intended it to apply to any particular state of facts, the question of whether it so applies becomes one of whether Congress had the power to legislate as to the particular case. If it did not, the conclusion is that section 5508 was not meant to cover such a case, the presumption being that Congress intended to pass a constitutional law. So we find the courts holding the section constitutional in Federal elections, as in the *Yarbrough* case, and holding it not to apply in state elections, as in the *Karem* case.

But section 5507 plainly applies to all elections, and it requires judicial construction in the face of its plain meaning to restrict it to Federal elections. The court must add the words " at a Federal election " to so narrow it; and this is just what this court has said may not be done. The only case not in accord with this position that we have found is that of *United States* v. *Munford*, 16 Fed. Rep. 223. That court held section 5506 constitutional, and distinguished it from the *Reese* case by holding that when Congress reënacted section 4 of the enforcement act as section 5506, it modified it sufficiently to make that section apply only to Federal elections, "leaving out of it the words which, in the case of *Reese*, had been considered to bring it under the Fifteenth Amendment."

The appellee contends that section 5507 is unconstitutional, and while Congress may provide for the punishment of bribery by an individual at Congressional elections, it has not constitutionally done so, and that the judgment of the District Court must be affirmed.

MR. JUSTICE BREWER delivered the opinion of the court.

The single question presented for our consideration is whether section 5507 can be upheld as a valid enactment, for if

not, the indictment must also fall, and the defendant was rightfully discharged. On its face the section purports to be an exercise of the power granted to Congress by the Fifteenth Amendment, for it declares a punishment upon any one who by means of bribery prevents another to whom the right of suffrage is guaranteed by such amendment from exercising that right. But that amendment relates solely to action "by the United States or by any State," and does not contemplate wrongful individual acts. It is in this respect similar to the following clauses in the Fourteenth Amendment:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Each of these clauses has been often held to relate to action by a State and not by individuals. As said in *Virginia* v. *Rives*, 100 U. S. 313, 318:

"The provisions of the Fourteenth Amendment of the Constitution we have quoted all have reference to state action exclusively, and not to any action of private individuals."

Again, in *Ex parte Virginia*, 100 U. S. 339, 346:

"They have reference to actions of the political body denominated a State, by whatever instruments or in whatever modes that action may be taken. A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws."

Again, in *United States* v. *Cruikshank*, 92 U. S. 542, 554:

"The Fourteenth Amendment prohibits a State from denying to any person within its jurisdiction the equal protection of the laws; but this provision does not, any more than the one which precedes it, and which we have just considered, add anything to the rights which one citizen has under the Constitution against another. The equality of the rights of citizens is a principle of republicanism. Every republican government

is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was orignally assumed by the States; and it still remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This the amendment guarantees, but no more. The power of the national government is limited to the enforcement of this guaranty."

In *Civil Rights Cases,* 109 U. S. 3, 13:

" And so in the present case, until some state law has been passed, or some state action through its officers or agents has been taken, adverse to the rights of citizens sought to be protected by the Fourteenth Amendment, no legislation of the United States under said amendment, nor any proceeding under such legislation, can be called into activity; for the prohibitions of the amendment are against state laws and acts done under state authority. Of course, legislation may, and should be, provided in advance to meet the exigency when it arises; but it should be adapted to the mischief and wrong which the amendment was intended to provide against; and that is, state laws, or state action of some kind, adverse to the rights of the citizen secured by the amendment. Such legislation cannot properly cover the whole domain of rights appertaining to life, liberty and property, defining them and providing for their vindication. That would be to establish a code of municipal law regulative of all private rights between man and man in society. It would be to make Congress take the place of the state legislatures and to supersede them. It is absurd to affirm that, because the rights of life, liberty and property (which include all civil rights that men have) are by the amendment sought to be protected against invasion on the part of the State without due process of law, Congress may therefore provide due process of law for their vindication in every case; and that, because the denial by a State to any persons of the equal protection of the laws is prohibited by the amendment, therefore Congress may establish laws for their equal protection. In fine, the legislation which Congress is authorized to adopt in this behalf is not general legislation upon the rights of the citizen, but corrective legislation, that is, such as may be nec-

essary and proper for counteracting such laws as the States may adopt or enforce, and which, by the amendment, they are prohibited from making or enforcing, or such acts and proceedings as the States may commit or take, and which, by the amendment, they are prohibited from committing or taking."

In *United States* v. *Harris*, 106 U. S. 629, 639:

" The language of the amendment does not leave this subject in doubt. When the State has been guilty of no violation of its provisions; when it has not made or enforced any law abridging the privileges or immunities of citizens of the United States; when no one of its departments has deprived any person of life, liberty, or property without due process of law, or denied to any person within its jurisdiction the equal protection of the laws; when, on the contrary, the laws of the State, as enacted by its legislative, and construed by its judicial, and administered by its executive departments, recognize and protect the rights of all persons, the amendment imposes no duty and confers no power upon Congress."

See also *Slaughter-House Cases*, 16 Wall. 36 ; *Scott* v. *McNeal*, 154 U. S. 34, 45 ; *Chicago, Burlington &c. Railroad* v. *Chicago*, 166 U. S. 226, 233.

But we are not left alone to this reasoning from analogy. The Fifteenth Amendment itself has been considered by this court and the same limitations placed upon its provisions. In *United States* v. *Reese*, 92 U. S. 214, 217, we said:

" The Fifteenth Amendment does not confer the right of suffrage upon any one. It prevents the States, or the United States, however, from giving preference, in this particular, to one citizen of the United States over another on account of race, color, or previous condition of servitude. Before its adoption this could be done. It was as much within the power of a State to exclude citizens of the United States from voting on account of race, etc., as it was on account of age, property or education. Now it is not. If citizens of one race having certain qualifications are permitted by law to vote, those of another having the same qualifications must be. Previous to this amendment, there was no constitutional guaranty against this discrimination; now there is. It follows that the

amendment has invested the citizens of the United States with a new constitutional right which is within the protecting power of Congress. That right is exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. This, under the express provisions of the second section of the amendment, Congress may enforce by 'appropriate legislation.'"

In passing it may be noticed that this indictment charges no wrong done by the State of Kentucky, or by any one acting under its authority. The matter complained of was purely an individual act of the defendant. Nor is it charged that the bribery was on account of race, color or previous condition of servitude. True, the parties who were bribed were alleged to be " men of African descent, colored men, negroes, and not white men," and again, that they were " persons to whom the right of suffrage and the right to vote was then and there guaranteed by the Fifteenth Amendment to the Constitution of the United States." But this merely describes the parties wronged as within the classes named in the amendment. They were not bribed because they were colored men, but because they were voters. No discrimination on account of race, color or previous condition of servitude is charged.

These authorities show that a statute which purports to punish purely individual action cannot be sustained as an appropriate exercise of the power conferred by the Fifteenth Amendment upon Congress to prevent action by the State through some one or more of its official representatives, and that an indictment which charges no discrimination on account of race, color or previous condition of servitude is likewise destitute of support by such amendment.

But the contention most earnestly pressed is that Congress has ample power in respect to elections of Representatives in Congress; that the election which was held, and at which this bribery took place, was such an election; and that therefore under such general power this statute and this indictment can be sustained. The difficulty with this contention is that Congress has not by this section acted in the exercise of such power. It is not legislation in respect to elections of Federal

officers, but is levelled at all elections, state or Federal, and it does not purport to punish bribery of any voter, but simply of those named in the Fifteenth Amendment. On its face it is clearly an attempt to exercise power supposed to be conferred by the Fifteenth Amendment in respect to all elections, and not in pursuance of the general control by Congress over particular elections. To change this statute, enacted to punish bribery of persons named in the Fifteenth Amendment at all elections, to a statute punishing bribery of any voter at certain elections would be in effect judicial legislation. It would be wresting the statute from the purpose with which it was enacted and making it serve another purpose. Doubtless even a criminal statute may be good in part and bad in part, providing the two can be clearly separated, and it is apparent that the legislative body would have enacted the one without the other, but there are no two parts to the statute. If the contention be sustained it is simply a transformation of the statute in its single purpose and scope. This question has been by this court in two cases carefully considered and fully determined. In *United States* v. *Reese, supra,* there was an indictment, one count of which was based upon the third and another upon the fourth section of the act of May 31, 1870, 16 Stat. 140, the fifth section of which act is substantially repeated in section 5507, Rev. Stat. It is true that, as stated, section four contains "no words of limitation or reference even that can be construed as manifesting any intention to confine its provisions to the terms of the Fifteenth Amendment. That section has for its object the punishment of all persons who by force, bribery, etc., hinder, delay, etc., any person from qualifying or voting." And it is also true that the government expressly waived the consideration of all claims not arising out of the enforcement of the Fifteenth Amendment to the Constitution. Nevertheless the decision is directly in point. We said ( p. 221 ):

"We are, therefore, directly called upon to decide whether a penal statute enacted by Congress, with its limited powers, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate

only on that which Congress may rightfully prohibit and punish. For this purpose, we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional, and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there. Each of the sections must stand as a whole, or fall altogether. The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be determined, is, whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only.

"It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the goverment. . . . To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty."

Again, in the *Trade-Mark Cases*, 100 U. S. 82, the validity of an indictment under the fourth and fifth sections of the act of Congress to punish the counterfeiting of trade-marks, 19 Stat. 141, was considered. The Congressional enactments at that time attempted to authorize trade-marks generally, and the statute referred to was equally general. It was held that under the Constitution, Congress did not have control over the subject of trade-marks generally, and, referring to the contention that to a limited extent it had, we said (p. 98):

"It has been suggested that if Congress has power to regulate trade-marks used in commerce with foreign nations and among the several States, these statutes shall be held valid in that class of cases, if no further. . . . While it may be true that when one part of a statute is valid and constitutional, and another part is unconstitutional and void, the court may enforce the valid part where they are distinctly separable, so that each can stand alone, it is not within the judicial province to give to the

words used by Congress a narrower meaning than they are manifestly intended to bear in order that crimes may be punished which are not described in language that brings them within the constitutional power of that body. This precise point was decided in *United States* v. *Reese*, 92 U. S. 214. In that case Congress had passed a statute punishing election officers who should refuse to any person lawfully entitled to do so the right to cast his vote at an election. This court was of the opinion that, as regarded the section of the statute then under consideration, Congress could only punish such denial when it was on account of race, color, or previous condition of servitude. It was urged, however, that the general description of the offence included the more limited one, and that the section was valid where such was in fact the cause of denial. But the court said " (and then follows the quotation we have already made from that case).

We deem it unnecessary to add anything to the views expressed in these opinions. We are fully sensible of the great wrong which results from bribery at elections, and do not question the power of Congress to punish such offences when committed in respect to the election of Federal officials. At the same time it is all-important that a criminal statute should define clearly the offence which it purports to punish, and that when so defined it should be within the limits of the power of the legislative body enacting it. Congress has no power to punish bribery at all elections. The limits of its power are in respect to elections in which the nation is directly interested, or in which some mandate of the National Constitution is disobeyed, and courts are not at liberty to take a criminal statute, broad and comprehensive in its terms and in these terms beyond the power of Congress, and change it to fix some particular transaction which Congress might have legislated for if it had seen fit,

The judgment of the District Court is

*Affirmed.*

MR. JUSTICE MCKENNA took no part in the decision of this case.

MR. JUSTICE HARLAN and MR. JUSTICE BROWN dissented.