## UNITED STATES v. WURZBACH.

District Court, W. D. Texas. April 3, 1929.

No. 7638.

John D. Hartman, U. S. Dist. Atty., of San Antonio, Tex.

Hugh R. Robertson, W. A. Wurzbach, and C. W. Anderson, all of San Antonio, Tex., for defendant.

WEST, District Judge. There are six counts in the indictment for violations of Criminal Code, title 18, USCA § 208, three for "receiving money for a political purpose," and three for "being concerned in receiving money for a political purpose." The demurrer affirms that the indictment is defective, because it fails to state an offense against any law of the United States.

Omitting portions not pertinent to the inquiry raised by the demurrer, the section makes it unlawful for a Representative in Congress to receive, or be concerned in receiving, from an officer of the United States, any contribution for any political purpose whatever. The questioned portion of the indictment in substance charges that the defendant, while a Representative in Congress, received from a named officer of the government a definite sum of money, being a contribution received by defendant for a political purpose; that is to say, for the purpose of promoting his candidacy for the nomination in the Republican primaries held on July 24, 1926, for the office of Representative in the national Congress from the Fourteenth congressional district of Texas; the defendant having knowledge of the official capacity of the officer, and at the time of receiving said money well knew that it was contributed by said officer for the political purpose mentioned, contrary to the statute.

This indictment sets out the words of the statute, and likewise clearly states the political purpose for which the contribution was made. Chief Justice Taft, sitting as a Circuit Judge, held that an offense stated in the words of this statute is sufficient. U. S. v. Scott (C. C.) 74 F. 213 (1895).

Political rights and political purposes are nearly related. " 'Political rights' consist in the power to participate, directly or indirectly, in the establishment or management of the Government. These political rights are fixed by the Constitution. Every citizen has the right of voting for public officers and of being elected. These are the political rights which the humblest citizen possesses." 2 Bouvier, Law Dictionary; Anthony v. Burrow (C. C.) 129 F. 783.

The promotion of one's candidacy for nomination for the office of Representative in Congress is an exercise by the citizen of a political right. The receipt of money in furtherance of such an object is a contribution for a political purpose.

The Texas statutes regulating the nomination of candidates of political parties through primary elections are shown in chapter 13 of Vernon's Annotated Texas Civil Statutes (1925), volume 9, title 50, "Elections," chapter 13, "Nominations," page 85, being embraced in articles 3100 to 3167, inclusive. Article 3100 defines "primary election" to mean, an election held by the members of an organized political party to nominate candidates to be voted for at a general or special election. 3101 provides that on primary election day in 1926, and every two years thereafter, "candidates for Governor and for all other state offices to be chosen by the vote of the entire state, and *candidates for Congress* and all district offices are to be chosen, * * * to be nominated by each organized political party that cast one hundred thousand votes or more, * * * shall be nominated in primary elections by the qualified voters of such party." 3102, date of primary: Fourth Saturday in July, 1926, and every two years thereafter shall be general primary election day, and primary elections to nominate candidates for a general election shall be held on no other day, except, etc. The remaining articles, to include No. 3167, cover regulatory provisions pertinent to the chapter subject head.

The defendant contends that the words "for *any* political purpose *whatever*" should be interpreted to refer only to the political purposes of the federal government.

What is the extent and power of Congress to alter the laws of a state which prescribes times, places, and manner of holding primary nominating elections by political parties of their district candidates for Representatives? The source of power is found in article 1, § 4, of the Constitution, which provides: "The times, places and manner of holding elections for Senators and Representatives shall be prescribed in each state by the Legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators."

Speaking generally, laws are limited in their effect to the extent of physical territory dominated and also to the authority exercised by the sovereignty proclaiming them. The states and the nation include the same physical territory, but their fields of legislation are made distinct and separate by the Constitution.

"The rights which candidates for nomination for the office of Senator of the United States may have in" a state primary nominating election "come wholly from the state law;

and a conspiracy to deprive them of such rights by debauching the primary with illegal votes for an opposing candidate is not within the scope of section 19 of the Penal Code [now 51, title 18, USCA], designed for the protection of rights and privileges secured by the Constitution or laws of the United States." United States v. Gradwell, 243 U. S. 476, 37 S. Ct. 407, 61 L. Ed. 857; Newberry v. United States, 256 U. S. 232, 41 S. Ct. 469, 65 L. Ed. 913.

"The power to control party primaries for designating candidates for the Senate is not within the grant of power 'to regulate the manner of holding elections' (art. 1, § 4) neither within the fair intendment of the words used nor the meaning ascribed to them by the framers of the Constitution; it is not necessary in order to effectuate the power expressly granted (article 1, § 8, cl. 18); and its exercise would interfere with purely domestic affairs of the states and infringe upon liberties reserved to the people." Newberry v. United States, supra, syllabus.

The ruling in the Newberry Case brought about repeal (43 Stat. 1074) of the particular section 8 of the then existing "Federal Corrupt Practices Act" (36 Stat. 822 and amendatory acts), in which Congress had provided for a regulation of the manner in which the states should conduct their primary nominating elections, upon the ground that the offending section 8 was in excess of the constitutional grant of power, and therefore void.

These two decisions definitely hold that the state nominating election primaries are wholly under state control. Is it therefore a violation of federal law for a Representative in Congress to receive from a federal officer a contribution of money for state political purposes, as distinguished from federal?

Three essential federal jurisdictional elements affirmatively appear in the indictment: (1) The receipt by a then Representative in the Congress of a contribution of money; (2) from an officer of the United States; (3) for a political purpose—that is, to promote the defendant's candidacy for nomination in the state primary election for Representative in Congress. It may be assumed that the federal government has authority to regulate, within reasonable bounds, the conduct of Representatives in Congress and its own officials and agents as to contributions for "federal political purposes"; but what of its authority over them for "*any* political purpose *whatever*"?

The effect of this general description of

an act, the doing of which is declared to be a felony, is to be ascertained by applying the tests of statutory construction. The following rule is declared: A criminal statute should define clearly the offense which it purports to punish, and that when so defined it should be within the limits of the power of the legislative body enacting it. United States v. Reese, 92 U. S. 214, 23 L. Ed. 563; Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550; James v. Bowman, 190 U. S. 127, 23 S. Ct. 678, 47 L. Ed. 979.

The court, in United States v. Reese, supra, referring to the effect of a penal statute enacted by Congress which in general terms was broad enough to cover wrongful acts without as well as within the constitutional grant of power, said: "It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. * * * To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty."

In the Trade-Mark Cases, supra, the validity of the law to punish counterfeiting of trade-marks was questioned by demurrer to the indictment. The acts exercised a general control of trade-marks, and the indictment stated the offense in general terms. The court held that the grant of power by the Constitution to Congress to control trade-marks was not general, but limited. It was suggested to the court that, since Congress was granted power to regulate trade-marks used in commerce with foreign nations and among the states, those statutes should be held valid as limited to that class of cases. The court held: "While it may be true that when one part of a statute is valid and constitutional, and another part is unconstitutional and void, the court may enforce the valid part where they are distinctly separable so that each can stand alone, it is not within the judicial province to give to the words used by Congress a narrower meaning than they are manifestly intended to bear in order that crimes may be punished which are not described in language that brings them within the constitutional power of that body."

■ The cases cited and principles declared are convincing that the otherwise well-understood words "for any political purpose what-

ever" are ambiguous and uncertain in meaning, as used in this statute. The act in question is highly penal, and, because of ambiguity and uncertainty, the rule of strict construction should be applied. In construing a penal statute all reasonable doubts concerning its meaning should operate in favor of the respondent. Where penalties are to be recovered the proof must bring the transaction within both letter and spirit of the law, and usually show the plain breach of both. Harrison v. Vose, 9 How. 372, 13 L. Ed. 179.

Following the principles announced in the cases quoted, it is plain that the statute fails to clearly define the offense which it seeks to punish; nor do the objects and purposes of the act definitely appear to be within the limits of the enacting power of Congress. The constitutional grant of power limited control of trade-marks to those used in commerce between foreign nations and among the states and Indian tribes. The major questions involved in the Trade-Mark Cases, supra, are found in the case at bar. There Congress had passed an act embracing control over all commerce, including that between citizens of the same state, and further declaring the counterfeiting of any trademark to be a criminal offense. The question before the court, raised by general demurrers to indictments, was whether Congress had the power to pass a general act when its power had been definitely limited.

Here the act is infinite in extent. It affects *"any* political purpose whatever." The indictment specifies a particular political purpose which refers to a field of jurisdiction outside the power of Congress, and in excess of the constitutional grant. The citation is a case in point, by ruling authority. Following the words of the Great Court, this court "cannot give a narrower meaning to the words used by Congress than they are manifestly intended to bear in order that crimes may be punished which are not described in language that brings them within the constitutional power of that body," because the power attempted to be exercised by the Congress exceeds the power granted by the Constitution.

The like principle is declared in the Newberry Case, supra. There the questioned statute was held to be void as in excess of its constitutional grant of power. It is to be rememberd that in this case the court held that the state nominating primary election was purely a state affair, and not the subject of regulation by Congress, because in

excess of the constitutional grant of power. From the foregoing premises the following conclusions result:

That the act in question being penal in character, and uncertain and doubtful in meaning, such doubts will be construed to the benefit of defendant.

That the political purpose specified in the indictment for which defendant is charged to have received is for a state political purpose, and not a federal one.

That Criminal Code, title 18, USCA § 208, is expressed in general terms, that embrace contributions for political purposes within the field of legislative authority, as well as outside thereof, and to the latter extent is probably unconstitutional.

The court therefore rules that the indictment is insufficient as a matter of law, and the demurrer urged thereto should be and is sustained. An order to this effect is already entered.