## UNITED STATES v. FOOTE.

### No. 50.

District Court, D. Delaware.

Jan. 16, 1942.

Stewart Lynch, U. S. Atty., of Wilmington, Del., for the United States.

H. Albert Young, of Wilmington, Del., for defendant.

WATSON, District Judge.

On March 24, 1941, the Defendant, Foote, was indicted for violation of the Federal Corrupt Practices Act, 2 U.S.C.A. § 241 et seq. The indictment contains twenty-six counts. In Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21 and 23 it is charged that the Defendant did wilfully and unlawfully cause an expenditure to be made to named persons for the purpose of having such persons vote at a general election for John G. Townsend and George S. Williams, who were respectively candidates for election as Senator and Representative in the Congress of the United States. In Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22 and 24 it is charged that the Defendant did wilfully and unlawfully cause an expenditure to be made to the same twelve persons for the purpose of causing such persons to vote at a general election; whereat the above candidates were presented for election. In Count 25 it is charged that the Defendant did wilfully and unlawfully cause an expenditure to be made to certain unknown persons for the purpose of having such unknown persons vote at a general election for John G. Townsend and George S. Williams who were respectively candidates for election as Senator and Representative in the Congress of the United States.

In Count 26, it is charged that the Defendant did wilfully and unlawfully cause an expenditure to be made to certain unknown persons for the purpose of causing such persons to vote at a general election

whereat the above named candidates were presented for election.

This indictment was brought pursuant to the provisions of Section 250, Title 2 U.S.C.A.

The Defendant filed a motion to quash the indictment, assigning ten reasons in support thereof, three of which attack the constitutionality of Section 250, Title 2 U.S.C.A., and the remaining seven attack the form and contents of the indictment. The Defendant also filed a plea in abatement assigning four reasons in support thereof. Reasons numbered 1, 2 and 4 attack the regularity of the proceedings before the Grand Jury and, in reason number 3, the authority of the Grand Jury to act beyond the term at which it was empanelled is challenged. The United States filed a motion to strike as to a portion of the plea in abatement and a replication as to the other part.

 Considering first the plea in abatement, I find that the reasons assigned are entirely without foundation in the record and are insufficient. First, with regard to the Grand Jury sitting beyond the term at which it was empanelled, the Act of March 28, 1910, c. 134, 36 Stat. 267, as amended, 28 U.S.C.A. § 421, provides that a Grand Jury may, upon order of court, be authorized to sit beyond the term at which it was empanelled to finish investigations begun but unfinished. Such orders were entered in this case and the record is devoid of any allegation or evidence attacking the regularity of these orders. Reasons numbered 1, 2 and 4 are insufficient as they are founded on information and belief, and are unsupported by any allegation or fact lending credibility thereto. In United States v. Lehigh Valley Railroad Co., D.C., 43 F.2d 135, 139, I said: " 'The verification of each states that the contents of his plea are true "as he verily believes." It has been held—properly, we think—that a plea of abatement to an indictment on information and belief is insufficient, United States v. Bopp, D.C., 232 F. 177; United States v. Morse, D.C., 292 F. 273, 278.' Olmstead v. United States, 9 Cir., 19 F.2d 842, 845, 53 A.L.R. 1472."

The motion to quash the indictment attacks the constitutionality of Section 250, Title 2 U.S.C.A., on the ground that the section covers elections over which Congress has no control and that, even if the section is limited to national elections, it is too uncertain to be sustained.

The section under consideration provides that: "It is unlawful for any person to make or offer to make an expenditure, or to cause an expenditure to be made or offered, to any person, either to vote or withhold his vote, or to vote for or against any candidate, and it is unlawful for any person to solicit, accept, or receive any such expenditure in consideration of his vote or the withholding of his vote."

The Federal Corrupt Practices Act, of which Section 250 is a part, sets forth in Section 241, Title 2 U.S.C.A. the following definitions of terms:

"(a) The term 'election' includes a general or special election, and, in the case of a Resident Commissioner from the Philippine Islands, an election by the Philippine Legislature, but does not include a primary election or convention of a political party;

"(b) The term 'candidate' means an individual whose name is presented at an election for election as Senator or Representative in, or Delegate or Resident Commissioner to, the Congress of the United States, whether or not such individual is elected;"

"(e) The term 'expenditure' includes a payment, distribution, loan, advance, deposit, or gift, of money, or anything of value, and includes a contract, promise, or agreement, whether or not legally enforceable, to make an expenditure."

 The source of the power of Congress to enact the section here under consideration is found in Article 1, Sections 4 and 8 of the Constitution. Under the decisions, there can not be any doubt of the authority of Congress to enact legislation to prevent the bribery of voters at elections where its members are presented for election. However, the Defendant contends that Section 250, Title 2 U.S.C.A. contains language so vague and broad that it includes bribery of voters in purely state elections. If this is true, the Court is without power to limit the effect of the section to acts within the jurisdiction of Congress. As was said in James v. Bowman, 190 U.S. 127, 142, 23 S.Ct. 678, 681, 47 L.Ed. 979: "We are fully sensible of the great wrong which results from bribery at elections, and do not question the power of Congress to punish such offenses when committed in respect to the election of Federal officials. At the same time it is all-important that a criminal statute should define clearly the offense which it purports to punish, and that when so defined it should be within the limits of the power of the legislative body enacting it. Congress has no power to

punish bribery at all elections. The limits of its power are in respect to elections in which the nation is directly interested, or in which some mandate of the National Constitution is disobeyed; and courts are not at liberty to take a criminal statute, broad and comprehensive in its terms and in these terms beyond the power of Congress, and change it to fit some particular transaction which Congress might have legislated for if it had seen fit."

A casual examination of Section 250, Title 2 U.S.C.A. might easily leave the impression that it is within the class of legislation condemned in the Bowman case in that the phrase "either to vote or withhold his vote" does not have immediately following it the words "at a national election" or some similar limiting expression. Thus, it conceivably could be read to include elections of local as well as national scope.

■■ Such a construction is negatived upon a more careful examination of the section. In the light of the clear purpose of the Federal Corrupt Practices Act to prevent corruption in public elections, it is apparent that Congress intended the entire phrase "either to vote or withhold his vote, or to vote for or against any candidate" to be read as a whole, for otherwise the phrase "either to vote or withhold his vote" would be without limit of any kind. When so read, the section is clearly limited to those elections at which a candidate, as that word is defined, is presented for election. The definition of the word "candidate" hereinabove quoted thus limits the section to elections at which certain Federal officials are presented for election and as so limited the section is within the authority granted to Congress under the Constitution.

The Defendant contends that even if the section is susceptible of a construction which would render it constitutional, the Court is without power to so construe it for the reason that the act is so vague and uncertain that it cannot be sustained.

■ The test of certainty as applied in the recent case of Lanzetta et al. v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 619, 83 L.Ed. 888, is as follows: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which

either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." See, also, Gorin v. United States, 9 Cir., 111 F.2d 712.

The Defendant in support of his contention relies upon a line of decisions of which United States v. Reese, 92 U.S. 214, 23 L.Ed. 563; James v. Bowman, supra; and the Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550 are representative. These cases are clearly distinguishable from the case sub judice because they all deal with statutes in which the Court was unable to find any expression limiting the effect of the statutes to matters within the power of Congress. That is, the Court was asked to "introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only." United States v. Reese, supra [92 U.S. 221, 23 L.Ed. 563].

■ Section 250, Title 2 U.S.C.A. does not present a situation such as that which has been condemned in that line of cases. Here there is a limitation contained in the section of the statute itself and the uncertainty which, it is contended, exists, lies only in the fact that it is grammatically possible to read the words "any candidate" as limiting only the phrase immediately preceding it "or to vote for or against" and not as limiting the entire phrase "either to vote or withhold his vote, or to vote for or against." While it is true and properly so that a penal statute must be expressed in clear language, it is not necessary that a penal statute be so written as to be beyond the possibility of more than one construction. Such a requirement would constitute an almost insurmountable obstacle in the path of legislative action. Where the words of a statute are accorded their ordinary meaning, and when so understood, the statute is capable of two constructions, one of which defines a crime within the constitutional powers of Congress and one beyond such powers, it would be an impertinence to hold that "men of common intelligence must necessarily guess at its meaning and differ as to its application." Such a ruling would be tantamount to deciding that it is reasonable to presume that Congress intended to exceed its constitutional powers. That Congress acted with full realization of the restrictions upon its powers to control elections clearly appears from the care with which the definitions of words used were

drawn and the other sections of the act prepared. It would certainly tax one's credulity to entertain the idea that Congress in one section of a statute would act in complete disregard of the limitations on its powers, which limitations were recognized and observed by it in the remaining sections of the statute. The Courts have always exercised with extreme reluctance their power to declare an Act of Congress unconstitutional and the burden assumed by one who asserts the unconstitutionality of an Act of Congress is correspondingly heavy. In this case I find that the Defendant has failed to meet the burden so imposed upon him.

The remaining grounds of the Defendant's motion to quash, except as to Counts 25 and 26, are not of sufficient merit to warrant further discussion.

▆▆▆▆ The Defendant contends that Counts 25 and 26 are not sufficiently definite. Count 25 charges the Defendant with bribery of certain persons unknown to the Grand Jury to vote for two "candidates" at a General Election held in Wilmington, Delaware, and Count 26 charges the Defendant with bribery of certain persons unknown to the Grand Jury to vote at the election. The question thus presented is, whether an indictment which charges the bribery of voters unknown to the Grand Jury at a place fixed only as the City of Wilmington, Delaware can be sustained. I think that it cannot. The place of the commission of the alleged offense is not confined to a definite area of such size as to clearly fix the crime; the time is fixed only as the fifth day of November, 1940; and the person bribed is indicated only as a voter. It is apparent that a conviction under counts of such a nature would not be a bar to a subsequent prosecution for bribery of a specified voter. An indictment to be valid must in some manner definitely fix the particular crime charged so that in the event of a subsequent prosecution for an offense based upon similar acts, an examination of the indictment will furnish the basis for determining whether or not the offenses are identical. Therefore, the motion to quash must be sustained as to Counts 25 and 26.

It is ordered that the plea in abatement filed in the above entitled case under date of April 26, 1941 is hereby dismissed, and the motion filed April 26, 1941 to quash the indictment is sustained as to Counts 25 and 26 of the indictment and dismissed as to Counts 1 to 24 inclusive.