UNITED STATES of America

v.

Mary Sue HUBBARD et al.

Crim. No. 78–0401.

United States District Court,
District of Columbia.

April 25, 1979.

See also, D.C., 474 F.Supp. 90.

Earl J. Silbert, U. S. Atty., Raymond Banoun, Judith Hetherton, Timothy J. Reardon, III, Steven C. Tabackman, Asst. U. S. Attys., Washington, D. C., for the U. S.

Leonard B. Boudin, Rabinowitz, Boudin & Standard, Michael Lee Hertzberg, New York City, for defendant Hubbard.

Philip J. Hirschkop, John D. Grad, Leonard S. Rubenstein, Hirschkop & Grad, P. C., Alexandria, Va., for defendants Heldt and Snider.

Roger E. Zuckerman, Roger C. Spaeder, Lawrence A. Katz, Richard A. Stanley, Wendy K. Manz, Zuckerman, Spaeder & Taylor, Washington, D. C., for defendants Willardson and Weigand.

Michael Nussbaum, James P. Davenport, Ronald G. Precup, Nussbaum & Owen, Washington, D. C., for defendants Hermann and Raymond.

John Kenneth Zwerling, Jonathan Shapiro, Zwerling & Shapiro, Alexandria, Va., for defendant Wolfe.

Leonard J. Koenick, Washington, D. C., for defendant Thomas.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. BACKGROUND

On August 15, 1978, a United States Grand Jury empanelled by the United States District Court for the District of Columbia returned a twenty-eight count indictment against eleven individuals. Indicted are: Mary Sue Hubbard, Jane Kember, Morris Budlong, Henning Heldt, Duke Snider, Gregory Willardson, Richard Weigand, Mitchell Hermann, Cindy Raymond, Gerald Bennett Wolfe, and Sharon Thomas. Nine of the defendants are currently under the jurisdiction of the Court and two, Kember and Budlong, are in Great Britain, where extradition proceedings are pending. Of the nine individuals before the Court, the Grand Jury indicated its belief that seven of the defendants, Hubbard, Heldt, Snider, Weigand, Willardson, Raymond, and Hermann, held official positions within the United States Branch of the Guardian's Office of the Church of Scientology. The other two, Wolfe and Thomas, are charged with being agents of the Guardian's Office.

Counts One and Twenty-three charge the defendants with conspiracy. The Count One conspiracy charges each of the defendants except Wolfe[1] with conspiring to collect, by covert means, data relating to the Church of Scientology, its founder L. Ron Hubbard, and other Church members, which was in the possession of the United States Department of Justice, the Department of the Treasury's Internal Revenue Service, and the Office of the United States Attorney for the District of Columbia. Count Twenty-three alleges that the defendants, except for Thomas, conspired to cover up the scope of these activities after two agents of the Church, Michael J. Meisner and Wolfe, were caught inside the United States Courthouse with fake IRS credentials.

Counts Two through Twenty-two charge the defendants with various offenses in furtherance of the conspiracy in Count One. Count Two charges all of the defendants except Wolfe, Thomas, and Weigand with the interception or aiding and abetting the interception of wire or oral communications in violation of 18 U.S.C. § 2511(1)(a).

1. Wolfe is named in Count One as an unindicted co-conspirator along with Michael J. Meisner. On May 13, 1977, Wolfe entered a guilty plea to a charge of fraudulent use of a government seal, a felony. In exchange for his plea, the government agreed not to charge him with any other possible violations arising out of three separate entries into the courthouse using a false IRS identification card. Michael J. Meisner is in the protective custody of the United States Marshal's Service and is expected to testify for the government at the trial of this case.

Counts Three through Eight, Fourteen, Fifteen, Nineteen and Twenty charge the defendants with second degree burglary or aiding and abetting such a crime under 22 D.C.Code 1801(b). Counts Nine through Thirteen, Sixteen through Eighteen, Twenty-one and Twenty-two charge the defendants with the theft of government property or aiding or abetting such theft in violation of 18 U.S.C. § 641.

Counts Twenty-four through Twenty-eight charge the defendants with various offense in furtherance of the conspiracy charged in Count Twenty-three. Count Twenty-four charges each of the defendants except Thomas with obstruction of justice in violation of 18 U.S.C. § 1503. Count Twenty-five through Twenty-eight charge the defendant Wolfe with false declarations before a Grand Jury in violation of 18 U.S.C. § 1623.

The defendants' counsel have requested that oral argument on their pretrial motions be held in three phases. The Court has determined that oral argument will not be necessary. Under Rule 1–9(f) of the United States District Court for the District of Columbia Rules, this decision is "within the sole discretion of the court."

## II. COUNT ONE OF THE INDICTMENT IS NOT DUPLICITOUS; IT PROPERLY ALLEGES A SINGLE CONSPIRACY.

The defendants move to dismiss Count One of the indictment on the ground that it improperly charges more than one conspiracy in a single count. Count One charges the defendants with agreeing to illegally locate and obtain information in the possession of the United States which relates to the Church of Scientology and to individuals, organizations, and agencies perceived to be enemies of the Church of Scientology. In support of the charge in Count One, the indictment alleges fifty-nine overt acts committed to effect the objects and means of this conspiracy.

The defendants contend that the allegations of this count actually encompass three distinct conspiracies: (1) the effort to obtain information from the Internal Revenue Service and the Tax Division of the Department of Justice concerning the government's effort to remove the tax exempt status of the Church of Scientology; (2) to protect the founder and leader of the Church of Scientology, L. Ron Hubbard, from harassment from governmental officials in general, and, particularly to keep him from being subjected to an abuse of the legal process through the subpoena power of the government; and (3) the scheme to obtain documents from all government agencies which had been withheld under the Freedom of Information Act, 5 U.S.C. § 552.

The defendants contend that this joinder of three conspiracies in one count of the indictment violates *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In *Kotteakos,* the Supreme Court reversed the convictions of defendants who were charged in a one-count indictment with a conspiracy to obtain fraudulent loans through the National Housing Act. *Id.* at 752–53, 66 S.Ct. 1239. At the center of the conspiracy was one man who arranged the fraudulent loans for a number of people. *Id.* at 754–55, 66 S.Ct. 1239. On the appeal before the Supreme Court, the government conceded that the indictment actually alleged several conspiracies in one count, *id.* at 752, 66 S.Ct. 1239, and the Court ruled that such a duplicitous indictment did not constitute harmless error. *Id.* at 767, 66 S.Ct. 1239. Thus, *Kotteakos* disallows the joinder of more than one conspiracy in a single count of an indictment.

This motion raises the question of what constitutes a single conspiracy. In ascertaining whether there is a single conspiracy or separate conspiracies, the crucial indicator is the nature of the conspiratorial agreement itself. *United States v. Varelli,* 407 F.2d 735, 742 (7th Cir. 1969), *cert. denied,* 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1971). However, since the agreement is rarely explicit and in writing, its nature must be inferred from the conduct of the alleged conspirators. Simply because the overt acts which constitute the

means and objectives of the conspiracy can logically be grouped into separate categories does not demonstrate that more than a single conspiracy is involved. *See Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942), *United States v. Johnson,* 337 F.2d 180, 185 (4th Cir. 1964), *aff'd,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), *citing Frohwerk v. United States,* 249 U.S. 204, 210, 39 S.Ct. 249, 63 L.Ed. 561 (1919). Even if the defendants are correct in pointing out that there must be some linkage between what can logically be treated as separate agreements, the defendants are not correct in asserting that the acts alleged in Count One of the indictment in this case lack such linkage.

■ Two key factors control the contours of a conspiratorial agreement: "the persons privy thereto, and the objectives encompassed therein." Note, Federal Treatment of Multiple Conspiracies, 57 Col.L.Rev. 387, 387 (1957) (citations omitted), *cited in United States v. Varelli,* 407 F.2d at 743. In this case, there is a large overlap between the people involved in the "three conspiracies" as claimed by the defendants. Of the ten defendants named in Count One, only one has no involvement in the first conspiracy as defined by the defendants; only one has no involvement in the second conspiracy as defined by the defendants; and only three have no involvement in the third conspiracy as defined by the defendants. Since so many of the same people are engaged in each of these three supposedly separate conspiracies, it is logical to conclude that distinct agreements were not made but, rather, a single agreement encompassing each of the distinct objectives was made by each conspirator.

■ The second factor, which as previously indicated, often demonstrates a linkage between individuals so that an agreement can be inferred is the objectives encompassed by the behavior of the conspirators. In *Kotteakos,* there was more than a single conspiracy because each person who attempted to get a loan through the central figure had no interest in whether the other people trying to get similar fraudulent loans succeeded or not. *See Blumenthal v. United States,* 332 U.S. 539, 558, 68 S.Ct. 248, 92 L.Ed. 154 (1947). The absence of any stake in the ventures of others made a single conspiracy unlikely. In this case, the government alleges a single objective: to illegally locate and obtain information in the possession of the United States which relates to the Church of Scientology and to individuals, organizations, and agencies perceived to be enemies of the Church of Scientology. The alleged conspirators are all allegedly members of the Church. Their interest in advancing the Church's interest would be assisted in each of the three conspiracies as described by the defendants. Accordingly, there is a sufficient stake by each defendant in the entire venture or conspiracy.

■ Therefore, the Court finds that there is a linkage between the separate objectives of Count One, and it properly alleges a single conspiracy. Thus, the motion of the defendants to dismiss the first count of the indictment is denied.

## III. THE FEDERAL STATUTE PROSCRIBING THE INTERCEPTION OF ORAL COMMUNICATIONS MUST BE READ TO REQUIRE A FEDERAL NEXUS IN ORDER TO PASS CONSTITUTIONAL MUSTER, AND SUCH A NEXUS IS PRESENTED IN THIS CASE.

The defendants have moved to dismiss Count Two of the indictment which charges a violation of section 2511(1)(a) of Title 18 U.S.C., the federal provision prohibiting eavesdropping. The defendants move to dismiss on the ground that the statute exceeds the bounds of Congressional authority to legislate.

Section 2511(1)(a) provides criminal penalties for anyone who "wilfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication." Section 2511(1)(a) is supplemented by section 2511(1)(b)(i–iv) which prohibits the interception of "oral communications through

the use of equipment under circumstances which involve or affect interstate commerce." The defendants are not charged with violating the latter section.

■ The Constitution has explicit protections against excessive concentration of power in the federal government. Power is allocated among the federal government and the states by specifying those powers the Congress might exercise and by emphasizing in the tenth amendment that undelegated powers were reserved to the states or respectively to the people. Accordingly, Congress has authority to act only with respect to the powers specified in the Constitution. *See* G. Gunther, Constitutional Law 81 (1975).

Section 2511(1)(b)(i–iv) was enacted by the Congress in accordance with its power over interstate commerce. In enacting section 2511(1)(a) the Congress was not at all clear where they derived the power to prohibit "any person . . . to intercept . . . any . . . oral communication." In fact, Congress expressed doubt over its authority to legislate in such a broad fashion. The Senate Report accompanying Title III of the Omnibus Crime Control and Safe Street Act of 1968, in which this section was enacted, states:

> The broad prohibition of subparagraph [2511(1)] (a) is also applicable to the interception of oral communications. The interception of such communications, however, does not necessarily interfere with the interstate or foreign communications network, and the extent of the constitutional power of Congress to prohibit such interception is less clear than in the case of interception of wire communications.

Sen.Rep.No.90–1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin. News at 2180–81.

The defendants contend that section 2511(1)(a) exceeds the authority of Congress to legislate, and that Congress has made no attempt to tie this section to an enumerated power of Congress. However, one court has given this section a judicial gloss in order to save its constitutionality. In *United States v. Burroughs,* 564 F.2d 1111 (4th

Cir. 1977), two management employees of J. P. Stevens Company were indicted for intercepting oral communications of union organizers. *Id.* at 1113. The jury returned a verdict of guilty, but the court granted the defendants' motion for a judgment of acquittal because the government had failed to provide the necessary evidence of a federal nexus. *Id.* The U.S. Court of Appeals for the Fourth Circuit upheld the district court's result, and held that "because subsection (1)(a) does not specify any particular basis for jurisdiction, we are of the opinion that proof of any rational basis would be adequate." *Id.* at 1115. Thus, the *Burroughs* decision, relied upon by the government in this case, merely requires that "*some* basis for federal jurisdiction be established at trial." *Id.* (emphasis in original).

The defendants strongly urge this Court not to follow the *Burroughs* case. According to the defendants, where statutory language and legislative intent is clear, courts will not construe a criminal statute so as to limit its natural scope only to those cases which would be within Congress' power. *Citing Aptheker v. Secretary of State,* 378 U.S. 500, 515–16, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Yu Cong Eng v. Trinidad,* 271 U.S. 500, 46 S.Ct. 619, 70 L.Ed. 1059 (1925); *James v. Bowman,* 190 U.S. 127, 23 S.Ct. 678, 47 L.Ed. 979 (1902); *United States v. Steffens,* 100 U.S. 82, 98–99, 25 L.Ed. 550 (1879); *United States v. Reese,* 92 U.S. 214, 23 L.Ed. 563 (1875).

■ The defendants and the government agree that a court can construe a statute to avoid a constitutional difficulty if such a construction is "fairly possible." *See Swain v. Pressley,* 430 U.S. 372, 378 n. 11, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) *quoting Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1966). However, the parties disagree whether this statute is susceptible to a limiting construction.

■ The Court finds that it will accept the narrowing gloss on the statute in order to save its constitutionality. *See Scales v. United States,* 367 U.S. 203, 221–22, 81 S.Ct.

1469, 6 L.Ed.2d 782 (1961). Accordingly, as did the court in *Burroughs,* the Court finds that the statute requires some federal nexus as an essential element thereof.

In making this determination, the Court is aware that the defendants have raised a very serious challenge to the facial validity of this statute. However, two other courts have upheld its validity, *see United States v. Burroughs,* 564 F.2d 1111 (4th Cir. 1977); *United States v. Perkins,* 383 F.Supp. 922 (N.D.Ohio 1974) (holding that there is a constitutional basis for the action of Congress in enacting section 2511(1)(a) to protect the right of privacy from incursions by private individuals). Moreover, the defendants concede that the actions alleged in the indictment constitute crimes at the common law; thus, a judicial modification of the statute will not create any notice problems to the defendants.

█ The Grand Jury has anticipated the *Burroughs* problem and has alleged a federal nexus in the indictment. The indictment charges that the defendants intercepted oral communications made during a meeting of agents and employees of the Internal Revenue Service of the United States Department of the Treasury, held at the IRS headquarters in the District of Columbia. Accordingly, the Motion of the defendants to dismiss Count Two is denied.

IV. COUNT TWENTY–THREE OF THE INDICTMENT PROPERLY INCLUDES THE OBSTRUCTION OF A CRIMINAL INVESTIGATION AS AN OBJECTIVE OF THE CONSPIRACY.

The defendants move to dismiss a portion of Count Twenty-three of the indictment, which charges a conspiracy in violation of 18 U.S.C. § 371. The indictment specifies four objects of the Count 23 conspiracy: (1) to obstruct justice in violation of 18 U.S.C. § 1503; (2) to obstruct a criminal investigation in violation of 18 U.S.C. § 1510; (3) to harbor and conceal a fugitive from arrest in violation of 18 U.S.C. § 1071; and (4) to make false declarations in violation of 18 U.S.C. § 1623. The defendants wish to have stricken the portion of Count Twenty-

three which alleges as an objective of the conspiracy violations of section 1510—to obstruct a criminal investigation.

█ Section 1510 was enacted to deter coercion of potential witnesses and has been interpreted to exclude coercion of accomplices from its coverage. *See United States v. Cameron,* 460 F.2d 1394, 1401–1402 (5th Cir. 1972). The rationale is that this section was enacted to protect a witness against intimidation or coercion by a third party who is attempting to prevent the witness from supplying or communicating information to a federal investigator. House Report No. 90–658, 1967 U.S.Code Cong. & Admin.News at 1762. According to the defendants, an accomplice or co-conspirator, may be punished under other sections such as obstruction of justice, but not under section 1510, if he has merely imposed silence on an accomplice.

The government contends that the allegations of Count Twenty-three plainly make out a violation of section 1510 as an object of the conspiracy. According to the government, the "accomplice" rule is not applicable to this case because the unindicted co-conspirator, Michael Meisner, at one point withdrew from the conspiracy, and it was not until his withdrawal that the conspirators agreed to obstruct a criminal investigation in violation of section 1510. Thus, the unindicted co-conspirator became a victim of the section 1510 objective when he was no longer an accomplice.

The defendants reject the plausibility of this analysis in their reply to the government's opposition, and further contend that the indictment fails to allege that the unindicted co-conspirator ever withdrew from the conspiracy. Thus, according to the defendants, the government is improperly attempting to amend the indictment, or has improperly joined more than a single conspiracy in one count.

The Court finds that the indictment makes out, as an objective of the conspiracy in Count Twenty-three, a violation of section 1510. Many of the overt acts alleged in the indictment under Count Twenty-

three support the government's claim that an objective of the conspiracy was to engage in conduct in violation of section 1510. *See* Indictment Count Twenty-three, ¶ 35–41, 44–45.

 In addition, in the context of a co-conspirator who has resigned from the conspiracy, there can be no such "accomplice" rule. The rationale behind section 1510 completely supports its use in such a situation. When an organized group attempts to prevent one of its members from withdrawing from a conspiracy, surrendering to federal investigators, and detailing the criminal offenses committed by the other members of the group, plainly a violation of section 1510 is made out. *See* H.Rep.No. 98–658, 1967 U.S.Code Cong. & Admin. News at 1762; *United States v. Cameron,* 460 F.2d at 1402 ("There is no hint in the proof of force, threats, intimidation and perhaps none of misrepresentation.").

 Furthermore, the indictment clearly is precise enough to allege violations of section 1510 as an objective of the Count Twenty-three conspiracy. *See United States v. Lippman,* 492 F.2d 314, 317 (6th Cir. 1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975). The Court rejects the defendants' contention that the indictment must specifically allege that the unindicted co-conspirator withdrew from the conspiracy prior to the section 1510 objectives. If the indictment makes out a claim that violations of section 1510 were an objective of the conspiracy, the Court is unable to fathom any reason why the indictment must specifically allege facts which remove the possibility that the so-called "accomplice" rule can be invoked by the defendants. The indictment need not anticipate every possible defense the defendants might raise in order to survive a motion to dismiss. Moreover, a reading of the indictment in this case makes clear that the unindicted co-conspirator did at one point attempt to withdraw from the conspiracy. The fact that this information is alleged in the overt acts rather than the charging paragraph is not significant because the absence of the "accomplice" de-

fense is not an essential element of the crime charged—conspiracy under section 371.

 Finally, the defendants contend that the agreement to victimize the unindicted co-conspirator in violation of section 1510 is only alleged against certain defendants, thus it is wholly separate and cannot be prosecuted along with the other agreement under *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The Court finds no merit in this contention. The scope of the conspiracy is determined by the scope of the agreement between the conspirators. Since the agreement is seldom visible, inferences must be made according to the stake of the conspirators in the venture and the relations of the parties to the separate activities. In this count, there is a substantial overlap between the parties involved in each separate action, and the separate objectives each are consistent with and support the overall objective; thus, the conspirators each had a similar stake in the success of the several objectives. Therefore, the appropriate inference is that one agreement was made, and each objective was merely a means to achieve the purposes of the overall agreement. *See* pages 71 and 72 *supra.*

Accordingly, the motion of the defendants to dismiss portions of Count Twenty-three relating to offenses under 18 U.S.C. § 1510 is denied.

## V. COUNT TWENTY–FOUR OF THE INDICTMENT PROPERLY CHARGES OBSTRUCTION OF JUSTICE BY CONCOCTING FALSE TESTIMONY FOR AN INVESTIGATION CARRIED OUT IN CONJUNCTION WITH A GRAND JURY PROCEEDING.

Count Twenty-four of the indictment charges eight of the defendants with obstructing justice in violation of 18 U.S.C. § 1503. In pertinent part, section 1503 provides criminal penalties for:

Who[m]ever corruptly, or by threat or force, or by any threatening letter or

communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States . . . or any grand jury . . . or officer in or of any court of the United States . . or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice . . ..

The defendants contend that there are two defects in Count Twenty-four: (1) Count Twenty-four charges no more than the preparation of false testimony, and this alone is insufficient to constitute a violation of section 1503; and (2) there is no charge of interfering with a judicial proceeding as required by section 1503.

According to the defendants, the preparation of false testimony cannot in isolation be construed to be an obstruction of justice. The defendants candidly point out that some courts have held that false statements alone can support a conviction under section 1503. *See United States v. Partin,* 552 F.2d 621, 630–31 (5th Cir.) *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); *United States v. Cohn,* 452 F.2d 881, 883–84 (2d Cir. 1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972). However, the defendants contend that the better-reasoned opinions and those approved by the United States Court of Appeals for the District of Columbia hold that prosecutions for the *giving* of misleading testimony is not permissible under 18 U.S.C. § 1503. *Citing United States v. Jackson,* 168 U.S. App.D.C. 198, 201 n. 11, 513 F.2d 456, 459 n. 11 (1975); *United States v. Essex,* 407 F.2d 214 (6th Cir. 1969).

According to the Court in *Essex,* section 1503 was enacted to reach contemptuous conduct occurring away from the court. *Id.* at 216. Furthermore, the court in *Essex* found that perjury alone lacks the essential element of obstruction. *Id.* at 218. And, in the facts presented in *Essex,* the court found that the defendant may have perjured herself but she did not endeavor to influence or interfere with officers, jurors,

or witnesses within the meaning of 18 U.S.C. § 1503. *Id.* The defendants contend that as in *Essex,* Count Twenty-four must be dismissed because it alleges no more than the preparation of false testimony.

The Court finds that Count Twenty-four in the indictment in this case is distinguishable from the charge in *Essex.* In *Essex,* the defendant was charged with no more than submitting a false affidavit in support of Jimmy Hoffa's motion for a new trial. The court stressed that the defendant was not charged with endeavoring to influence or interfere with officers, jurors, or witnesses. *Id.* at 218. In this case, the defendants are not charged in Count Twenty-four with merely giving false testimony before the Grand Jury. Count Twenty-four charges that the defendants:

> willfully and knowingly, would and did corruptly influence, obstruct and impede and would and did corruptly endeavor to influence, obstruct and impede the due administration of justice in connection with the investigation referred to in paragraph three (3) of this Count, by preparing and assisting in the giving of false and misleading statements and information, for the purpose of concealing and causing to be concealed the identities of the persons who were responsible for, participated in, and had knowledge of (a) the activities which were the subject of the said investigation and judicial proceedings, and (b) other illegal and improper activities.

By charging the defendants with preparing and assisting in the giving of false and misleading testimony in order to impede the investigatory function of the Grand Jury, the indictment in Count Twenty-four steps beyond mere perjury and properly alleges an obstruction of justice under section 1503. The Court is not prepared to hold that nothing short of bribery, intimidation or threats suffices to state an offense under section 1503. Section 1503 does include the word "impede." Moreover, in the present posture of this case, the Court cannot say that the government's evidence will not show intimidation. The indictment need

not specify the specific means but must only notify the defendants of the nature of the charge so that they may adequately prepare their defense. *United States v. Haldeman,* 181 U.S.App.D.C. 254, 346, 559 F.2d 31, 123 (1976) (per curiam) (en banc), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

The defendants' second point is that Count Twenty-four fails to allege that the defendants obstructed a judicial proceeding as required by section 1503. The Court rejects this contention. The third paragraph alleges that:

> The FBI and the Office of the United States Attorney for the District of Columbia were conducting an investigation which was continued in conjunction with a Grand Jury of the United States District Court for the District of Columbia, which was duly empaneled and sworn on or about October 13, 1976, to determine whether violations of the statutes of United States and of the District of Columbia had been committed in the District of Columbia and elsewhere, and to identify the individuals who had committed such violations.

The Court finds that this allegation provides the necessary nexus to satisfy section 1503's requirement that there be an obstruction of a judicial proceeding such as a Grand Jury investigation. *See United States v. Haldeman,* 181 U.S.App.D.C. at 338 n. 229, 559 F.2d at 115 n. 229.

Accordingly, the defendants' motion to dismiss Count Twenty-four of the indictment is denied.

## VI. THE DEFENDANTS HAVE FAILED TO SHOW THAT THE INDICTMENT IS THE RESULT OF A BAD FAITH PROSECUTION.

The defendants contend that the indictment must be dismissed as the instrument of a selective, discriminatory and bad faith prosecution and by reason of the government's gross misconduct. To support this contention, the defendants rely on *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) and *Fowler v.*

*Rhode Island,* 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828 (1953). In *Yick Wo,* the board of supervisors allowed all who were not Chinese but one, to operate laundries in wooden buildings, but withheld consent from *all* Chinese. 118 U.S. at 359, 6 S.Ct. 1064. In *Fowler,* a Jehovah's Witness minister was convicted of violating an ordinance for preaching in a public park. 345 U.S. at 67–68, 73 S.Ct. 526. In this case, the defendants are charged with being burglars, thieves, perjurers, and conspirators. There is no allegation that others committing similar acts have not been prosecuted, or that the alleged behavior came within first amendment protections. The Court finds that the defendants have failed to meet the burden of establishing a *prima facie* case of selective or discriminatory prosecution. *See United States v. Berrios,* 501 F.2d 1207, 1212 (2d Cir. 1974). There has been absolutely no showing that any official involved in this prosecution has administered the law in any way but with an equal hand.

Included with the defendants' motion to dismiss the indictment as an instrument of bad faith prosecution is the request to suppress evidence obtained by illegal surveillance. The Court finds that there is no merit to this request. The government has filed seven affidavits from Assistant United States Attorneys and FBI agents who have been involved in this case since its inception, stating that none of the evidence to be used at trial or presented to the Grand Jury was derived in any way from electronic surveillance. Therefore, such surveillance has no bearing on this case. Accordingly, the defendants' motion is denied.

## VII. THE INDICTMENT WILL NOT BE DISMISSED ON THE GROUND OF PREJUDICIAL PRE–INDICTMENT PUBLICITY AND ALLEGED PROSECUTORIAL MISCONDUCT.

The defendants move to dismiss the indictment because: (1) prejudicial pre-indictment and pre-trial publicity was generated by the government calculated to create a climate of public opinion hostile to the de-

fendants and to influence and prejudice the grand jury; (2) government misconduct before the grand jury which was calculated to prejudice the grand jury against the defendants; (3) government misconduct in presenting evidence to the grand jury in such a way as to deprive it of its capacity to arrive at an informed independent judgment with regard to each defendant; (4) for actual bias and prejudice of the grand jury; (5) for violation of grand jury secrecy contrary to Rule 6(e) of the Federal Rules of Criminal Procedure; (6) the indictment was not founded on an informed, independent judgment of the grand jury with regard to each defendant; and (7) the prosecution violated the Justice Department and court rules with respect to pre-indictment publicity. In the alternative, the defendants request a hearing on the government's responsibility for the press leaks which they claim have marked this case, the prosecution's conduct before the grand jury tending to prejudice that body, the manner in which the prosecution presented evidence to the grand jury, and the actual bias and prejudice of the grand jury.

 The first step in the defendants' argument is that there was an intolerable degree of prejudicial pre-indictment publicity. However, the Court is aware of no case in which an indictment was dismissed for prejudicial pretrial publicity. The standard remedies for prejudicial publicity are the granting of a continuance or a change of venue. *United States v. Haldeman,* 181 U.S.App.D.C. 254, 282–287, 559 F.2d 31, 59–64 (1976) (per curiam) (en banc), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). The defendants have sought neither remedy. Moreover, *voir dire* is the appropriate means for determining whether a fair and impartial jury can be selected. *Jones v. Gasch,* 131 U.S.App.D.C. 254, 262, 404 F.2d 1231, 1239 (1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1414, 20 L.Ed.2d 286 (1968). Thus, there is no basis for the defendants' contention that the indictment must be dismissed on account of prejudicial pretrial publicity.

 The next step in examining defendants' numerous claims with regard to pre-indictment publicity is adding into the picture defendants' allegations of prosecutorial violations of rules and regulations which prohibit feeding information to the press. First, the defendants have offered absolutely no evidence linking the government to any press leaks. Second, even if government employees violated such regulations, the defendants have failed to support their claim that this would give them a right to have the indictment dismissed. Certainly the government employees could be punished, but the Court is not convinced that the identity of the people who create the publicity should somehow change its significance when determining whether the trial can proceed. The Court is unable to find any basis for what would amount to an exclusionary rule. Applying the rule of *Stone v. Powell,* 428 U.S. 465, 489, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), on balance, the social costs in dismissing an indictment because of a leak by the government greatly outweigh the benefits in deterrence, since there are remedies already available for such government misconduct.

 The defendants' allegations of prosecutorial misconduct are also unpersuasive. The government has pointed out that the defendants did not at any time during the pendency of the grand jury's investigation petition the Court for relief from what it now perceives to be improper prosecutorial behavior. The defendants have been given ample time to reply and have offered no explanation for their delay in bringing these serious allegations to the Court's attention. Nevertheless, in the interest of justice, and in view of the number of affidavits filed by the defendants to support their claim, the Court will order the government to produce the transcripts of the Grand Jury's proceedings for an *in camera* inspection by the Court. *See People v. Sears,* 49 Ill.2d 14, 273 N.E.2d 380 (1971). If any improprieties are discovered, they will be brought to the attention of all counsel, and in that event the Court will consult with counsel to determine the appropriate action to take under the circumstances.

## VIII. PHOTOCOPYING GOVERNMENT DOCUMENTS THROUGH THE USE OF GOVERNMENT EQUIPMENT AND SUPPLIES IS PROHIBITED BY THE FEDERAL LARCENY STATUTE.

Ten of the substantive counts of the indictment in this case charge violations of 18 U.S.C. § 641. Each count alleging violations of section 641 track the language of the statute alleging that the defendants "did wilfully and knowingly steal, purloin and convert to their own use records and things of value of the United States and of a department and agency thereof . .," and give the date and time of the alleged theft as well as the property involved— "documents and photocopies thereof." Although the indictment alleges theft of documents as well as photocopies, the government has indicated that no originals were stolen. Instead, the government contends that the defendants removed originals of government documents and made photocopies of them through the use of government equipment and government supplies, and then returned the original to the agency. United States' Opposition to Defendants' Motion to Dismiss Counts Nine Through Thirteen, Sixteen Through Eighteen, Twenty-one Through Twenty-two, or in the Alternative, to Strike Surplusage From Said Counts at 1 (February 23, 1979).

The defendants contend that the charges under section 641 must be dismissed because theft requires an intent to permanently deprive the owner of his right to possession, and the indictment fails to allege that something was permanently taken. The government in response has attempted to predicate a violation of section 641 on two theories. The first is that the defendants stole the information in the documents, and the second is that the copies, allegedly made from government documents, by means of government resources, are records of the government, and thus the copies were stolen. The Court finds that the latter rationale will support a violation of section 641, and will not reach the issue raised by the former rationale. Therefore, it is unnecessary to reach the claims of the defendants in this regard.

In *United States v. DiGilio,* 538 F.2d 972 (3d Cir.) *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1976), the court ruled that availing oneself of government resources in copying government documents makes the duplicate copies government property and "things of value" within the requirements of section 641. *Id.* at 977–78. Therefore, the indictment's claim that the defendants violated section 641 by copying government documents through the use of government equipment withstands the defendants' motion to dismiss because government-owned copies were taken with the intent to permanently deprive the owner of possession.

The Court will not reach the question of the validity of the government's alternative rationale. If section 641 reaches the theft of government information, as the government contends, serious first amendment questions would be raised, and there is ample legal authority to avoid those constitutional questions by interpreting the statute to not include information as a thing of value.

In *Pearson v. Dodd,* 133 U.S.App.D.C. 279, 410 F.2d 701, *cert. denied,* 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969), the court of appeals for this circuit ruled that the temporary removal of documents for copying purposes does not result in a tortious conversion. *Id.* at 708. If the actions do not constitute the tort of conversion, the same actions should not constitute the federal crime of conversion in the absence of some clearer indication of Congressional intent to change the law. *See Morissette v. United States,* 342 U.S. 246, 262, 72 S.Ct. 240, 96 L.Ed. 288 (1952). In addition, in a case completely devoid of first amendment implications, the U.S. Court of Appeals for the Ninth Circuit ruled that section 641 must be construed to include only tangible property. *Chappell v. United States,* 270 F.2d 274, 277–78 (9th Cir. 1959). In *Chappell,* the court set aside the conviction under section 641 of an officer in the military who had ordered a subordinate to paint three

dwellings owned by the defendant. The court found that the conversion of a government employee's labor was not prohibited by section 641, because the statute incorporated common law definitions of offenses, and conversion requires the theft of tangible property. *Id.* at 277–78.

Moreover, treating information as a thing of value under section 641 would raise the strong possibility of harm to important first amendment values. *See* Nimmer, National Security Secrets v. Free Speech: The Issues Left Undecided in the *Ellsberg* Case, 26 Stan.L.Rev. 311, 322–24 (1973). First, there is clear precedent that the copying of any document does not constitute conversion. *See Local Trademarks, Inc. v. Price,* 170 F.2d 715, 718–19 (5th Cir. 1948); *Pickford Corp. v. DeLuxe Laboratories, Inc.,* 169 F.Supp. 118, 120 (S.D.Cal.1958). Second, whereas there are penalties for copyright violations, the Congress has explicitly provided that there is no copyright on government documents. 17 U.S.C. § 105. Moreover, if there were a crime for converting unspecified government information, it would not be limited to photocopying. If a person came across certain completely unclassified information during his employment within the federal government, and discussed it outside the scope of his employment, an argument could be made that he had converted government information in violation of section 641. Of course, such an interpretation would be impermissible. *See New York Times v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The free exchange of ideas, especially ideas in possession of the government, is at the very heart of our first amendment guarantees. *See Whitney v. California,* 274 U.S. 357, 377, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring). Accordingly, the government will not be permitted to rely on any alleged conversion of government information for a violation of section 641 in this case. However, the government may proceed on the theory that copies made from government resources are owned by the government. Accordingly, the defendants' motion to dismiss all charges of section 641 violations is denied.

## IX. THE GOVERNMENT MUST PARTICULARIZE SOME OF THE CHARGES IN THE INDICTMENT.

The defendants have made thirty-three specific requests, with numerous subparts, for particularization of the indictment. Three purposes are usually ascribed to a bill of particulars: (1) to enable a defendant to prepare his defense; (2) to avoid prejudicial surprise at trial; and (3) to protect a defendant against double jeopardy. 1 C. Wright, Federal Practice & Procedure sec. 125 & 129. The issue of particularization is addressed to the sound discretion of the district court. *Wong Tai v. United States,* 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545 (1927).

The defendants have broken down the government's objections to their thirty-three requests into thirteen categories.

 In response to the defendants' requests numbers 1, 3, 4d, and 30b, the government objects on the ground that the defendants seek definitions, citing *United States v. Smallwood,* 443 F.2d 535, 540–41 (8th Cir.), *cert. denied,* 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93 (1971). However, simply because the defendants seek definitions is not a ground for objection unless the defendants seek a definition of a term that is sufficiently clear to enable the defendants to prepare their defense. *Id.* at 540. In this case the defendants seek explication of the terms "covertly," "agent of Scientology," "various illegal and unlawful means," "in conjunction with." The Court finds that each of these terms or phrases is unnecessarily vague and could benefit from some elaboration on the government's part.

 The government has opposed the defendants' requests numbers 4a, 4f, 4g, 10a, 19d, and 19e, on the ground that the proof of a conspiracy does not require specification of the places where the alleged conspiracy was entered into. The Court finds that this information is not necessary for the defendants to adequately prepare their defense. Moreover, it is evidence which is not available in a bill of particu-

lars. *United States v. Smallwood,* 443 F.2d at 540–41.

 The government opposes the defendants' requests numbered 4e, 4h, 19c, 19f, and 19h, on the ground that any acts in furtherance of the conspiracy but not enumerated in the indictment or allegedly committed by unindicted co-conspirators need not be particularized. With regard to the acts of unindicted co-conspirators, the Court finds that the government should provide "the overt acts by . . . any alleged conspirator not named as a defendant, which the government will prove at trial by which it is alleged defendants sought [to commit the crimes charged]." *United States v. Corrado,* 307 F.Supp. 513, 517 (S.D.N.Y.1969). The defendants also request any overt acts not specified in the indictment. The Court grants this request to the extent of approximate specifications. *See United States v. Fine,* 413 F.Supp. 740, 746 (W.D.Wis.1976).

 The government objects to the defendants' requests numbered 6, 7f, 10b, 15g, 15h, 16b(i), 16b(iv), 24, 31j, and 33b, on the ground that it need not disclose its theory of the case in a bill of particulars. Due to the complexity of the present indictment, the Court finds that such information should be made available to the defense. *See United States v. Baker,* 262 F.Supp. 657, 674 (D.D.C.1966).

 The government opposes the defendants' requests numbers 11a, 15c, 16a, and 18, on the ground that the government need not provide the exact time or date of meetings. The Court finds that such information is purely evidentiary material unavailable in a bill of particulars. *United States v. Smallwood,* 443 F.2d at 540.

 The government objects to the defendants' requests numbered 7f, 15b, 15d, and 16d, on the ground that the manner or means with which the acts alleged in the indictment were carried out are unavailable in a bill of particulars. The Court finds that the government should make such information available. *See United States v. Baker,* 262 F.Supp. 657, 673 (D.D.C.1966).

 The government resists the defendants' requests numbered 7a–d, 11d, 11e, 12b, 13, 19f, 19h, 21e, and 30a, on the ground that the defendants seek discovery which is unavailable in a bill of particulars. These requests seek information such as the minute details of the occurrence of the overt acts. The Court finds this to be purely evidentiary material not subject to particularization. *United States v. Smallwood,* 443 F.2d at 540.

 The government opposes the defendants' requests numbered 5, 9a, 9b, 25, 26, and 27, on the ground that the government has already provided the information to the defendants. The defendants still seek answers to their request for particularization because they do not wish "to ferret out" the particulars they seek from the information already provided. If the government has disclosed this information, the Court does not see why the government rather than the defendants should ferret it out.

 The government has opposed defendants' requests numbered 15e, 15f, and 31k, on the ground that they are beyond the scope of a bill of particulars. The Court finds that requests 15e and 15f seek the minute details of meetings and times, and therefore are denied. However, request number 31k asks for the identities of unindicted co-conspirators alleged to have participated in the crime charged in Count Twenty-four. To the extent that the government is able, the Court finds that it should respond to this request. *See United States v. Orsini,* 406 F.Supp. 1264 (S.D.N.Y. 1976).

The government objects to the defendants' requests numbered 19g, 31c, 31d, 31f, 31h, 33c, and 33d on the ground that the indictment is clear on these points. The Court agrees with the government with respect to requests numbered 19g, and 33d(iii). The Court finds that the government should provide approximate specifications to requests numbered 31c, 31d, 31f, 33c, 33d(i), and 33d(iv), and should answer request number 31h.

The government has answered the defendants' requests numbers 11a, 15a, 21a, 21b, 21c, 21d, 22c and 31i in ways which the defendants contend is so vague to be essentially meaningless. For example, the defendants request that the government specify which criminal statute the indictment charges the defendants conspired to obstruct. The governments' response is that it ought not be required to do legal research for the defendants. The Court finds that the government's answers to requests numbered 21b and 22c should be further explicated; however, the other responses are sufficiently complete to permit the defendants to prepare their defense.

The government has failed to object to the defendants' requests numbered 15i and 33e. The Court finds that the government should make this information concerning the identity of unindicted co-conspirators available.

■ In ordering the government to particularize, it should be noted that it is not the Court's intention to strictly limit the government's proof at trial, and if the government is unable to respond in precise terms at this time because it is uncertain as to the facts, the government should respond as precisely as it is able. *See United States v. Fine,* 413 F.Supp. 740, 746 (W.D.Wis. 1976); *United States v. Ahmad,* 53 F.R.D. 194, 200 (M.D.Pa.1971).

X. INSINUATIONS OF UNALLEGED FACTS, IRRELEVANT DESCRIPTIVE RECITALS, INFLAMMATORY LANGUAGE, AND NARRATIVE DECLARATIONS OF PAST FACT ARE STRICKEN FROM THE INDICTMENT AS SURPLUSAGE.

The defendants have moved the Court to strike from the indictment sixty-nine (69) items of prejudicial surplusage, in four categories: (1) insinuations of unalleged facts; (2) irrelevant descriptive recitals; (3) inflammatory language; and (4) narrative declarations of past facts not evidentially admissible. This motion is made pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure which empowers the Court to "strike surplusage from the indictment."

Under the defendants' category of insinuations of unalleged facts are phrases which occur throughout the indictment such as "among other things," "including but not limited to," and "at least." The defendants object to their inclusion in the indictment because they insinuate unalleged facts unnecessary to the elements of the crimes charged, and they may open the door to attempts by the prosecution to enlarge the charges, and they may lead the jury to infer accusations of crimes beyond those actually charged. The defendants rely on the cases of *United States v. Brighton Building & Maintenance Co.,* 435 F.Supp. 222, 230–31 (N.D.Ill.1977), and *United States v. Pope,* 189 F.Supp. 12, 25–26 (S.D.N.Y.1960). The court in *Pope* struck the words "among other things" from an indictment, while the court in *Brighton Building* struck the words "at least."

■ The government contends that in *Pope* and *Brighton Building,* the offending words appeared in the charging paragraphs of individual counts of the indictment. The government's contention is incorrect. The court in *Brighton Building* struck such words throughout the indictment, and neither court drew any distinction based on the location of the offending words. Moreover, the Court is not convinced that such words are not prejudicial outside of the charging paragraphs. Regardless of their location in the indictment, they may encourage the jury to draw inferences that the defendants are believed to be involved in activities not charged in the indictment. Furthermore, they serve no useful purpose. Accordingly, the words "various," "including but not limited to the following," "among other things," "and related matters," "on a number of occasions," "at least," "other illegal and improper activities," "and elsewhere," and "besides the defendants" shall be stricken from the indictment as irrelevant and prejudicial.

The defendants also move the Court to strike descriptive language that is irrelevant and prejudicial from the indictment.

Within this category, the defendants include: (1) the inclusion of legal means in a list described as "illegal means;" (2) references to a confrontation between the Federal Bureau of Investigation and alleged members of the Church of Scientology in the United States Courthouse in Washington, D.C.; (3) the guilty plea and sentencing of the defendant Wolfe for his wrongful use of a governmental seal; and (4) the cataloging of the offenses the grand jury was investigating.

First, the Court finds that the inclusion of legal means in a list entitled "illegal means" is prejudicial and irrelevant and should be stricken. The government is correct in asserting that an overt act need not be illegal; however, the Court finds that inclusion of legal acts under a heading of "illegal means" would be prejudicial and misleading. The defendants request that the legal means be struck. However, the Court finds that the problem can be remedied by striking the words "illegal" and "unlawful" from the introduction to the list; thus, the prejudice will be removed.

Second, the defendants move to strike references to a confrontation between Federal Bureau of Investigation agents and alleged members of the Church of Scientology in the United States Courthouse. Since this occurrence is not charged in the indictment as a substantive offense, the Court finds that it may be prejudicial to the defendants. Accordingly, it shall be stricken from the indictment.

Third, the defendants move to strike references to the guilty plea and sentencing of Gerald Wolfe for wrongful use of a government seal. The Court finds that such references are prejudicial and irrelevant, and orders them stricken from the indictment. *See United States v. Verra,* 203 F.Supp. 87, 89 (S.D.N.Y.1962). As in *Verra,* the defendants are charged with conspiracy to obstruct justice and one defendant's prior conviction of the substantive offense is not an essential element of the charge in this indictment.

Fourth, the defendants move to strike the litany of offenses the grand jury was investigating. The Court finds these references to be prejudicial and irrelevant. *See United States v. Bonanno,* 177 F.Supp. 106, 116 (S.D.N.Y.1959), *rev'd on other grounds sub nom. United States v. Bufalino,* 285 F.2d 408 (2d Cir. 1960). These are as the above irrelevant descriptive recitals.

Under the defendants' category of inflammatory language are such words as "infiltrate," "burglary," "cover up," "covertly," "bogus," "illegally," and "operatives." The Court finds that the use of such colorful words to describe the allegations in the indictment is improper where less colorful and more accurate words would suffice. The government contends that this is mere semantic quibbling; however, the Court finds such words to be prejudicial and unnecessarily loaded.

Finally, the defendants move the Court to strike narrative declarations of past facts which are lawful acts of communicating written and oral reports among the defendants concerning past events. The defendants rely on *United States v. Birnbaum,* 337 F.2d 490, 495 (2d Cir. 1964), in which the court held such narrative declarations to be inadmissible into evidence. The government has tried to distinguish *Birnbaum* by arguing that these narratives would be admissible because they were made in furtherance of the conspiracy to obstruct justice. Without resolving the evidentiary question at this time, the Court will order these references struck in order to assure that the jury will not be prejudiced should this evidence later be held to be inadmissible.

Nothing in this Memorandum Opinion should be interpreted as a ruling on the admissibility of evidence at trial.

## XI. ALLEGED THEFTS OF DOCUMENTS FROM INTERPOL WERE IN FURTHERANCE OF THE CONSPIRACY.

The defendants have moved to strike four overt acts from the first count of the indict-

ment. The four overt acts the defendants seek to have stricken allege thefts of documents from the United States National Central Bureau to Interpol. The defendants contend that these alleged thefts could not be in furtherance of the conspiracy to illegally obtain information and documents in the possession of the United States because Interpol is not an agency or department of the United States.

██ Defendants point out that Title 5 of the U.S.C. section 101 lists all the departments in the executive branch and Interpol does not appear on the list. However, control of the United States National Central Bureau of Interpol is vested in the Deputy Attorney General of the United States. 28 C.F.R. 0.15(b)(3). Furthermore, it is undisputed that the office is staffed by United States law enforcement personnel. Its policies are enunciated by the Department of Justice, and its offices are located in the United States Department of Justice main building and previously were in the United States Department of the Treasury headquarters. Accordingly, the Court finds that the indictment's description of the Interpol documents as "in the possession of the United States" is not without foundation.

██ Alternatively, the defendants contend that the indictment alleges that the documents were in the possession of the Department of Justice and the Department of the Treasury, and that Interpol documents would not be included in such a description. However, the indictment alleges that the Interpol documents stolen were in the custody, control or possession of the United States National Central Bureau to Interpol offices located at, or from actual employees of, the United States Department of Justice and the United States Department of the Treasury. The Court finds that the allegations of thefts from Interpol are not surplusage, but are properly alleged as overt acts in furtherance of the conspiracy alleged in Count One. Accordingly, the motion is denied.

## XII. THE DEFENDANTS HAVE NO RIGHT TO PERSONALLY CONFRONT WITNESSES IN PROTECTIVE CUSTODY TO DETERMINE THEIR WILLINGNESS TO BE INTERVIEWED BY DEFENSE COUNSEL.

The defendants have moved the Court to order the government to produce Michael Meisner at a hearing before this Court to determine his willingness to be interviewed before trial by defense counsel. Mr. Meisner was allegedly involved in the conspiracy as a member of the Church of Scientology. According to the government, Meisner requested that he be placed in protective custody because he feared that the defendants and other members of the Church would cause him grievous bodily harm. It is the defendants' understanding that Meisner will testify for the government in the trial of this case.

The government has indicated its willingness to forward a letter from the defendants' counsel to the United States Marshal's Service, who would in turn forward it to Meisner. The defendants contend that they have a right to personally confront Meisner to determine if he is willing to be interviewed by defense counsel, and that it is "not proper for the prosecution to serve as conduit for defense counsel's request." Defendants' Reply to Government's Response to Defendants' Motion to Interview Witnesses Held in Protective Custody, at 6 (March 27, 1979).

██ The law is clear that the government may not interfere with defense counsel's attempts to interview a potential witness. *Gregory v. United States,* 125 U.S. App.D.C. 140, 143–44, 369 F.2d 185, 188–89 (1966) *cert. denied* 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969); *Coppolino v. Helpern,* 266 F.Supp. 930, 935 (S.D.N.Y. 1967). However, the law is just as clear that the witness cannot be compelled to be interviewed. *See United States v. Matlock,* 491 F.2d 504, 506 (6th Cir.) (per curiam), *cert. denied,* 419 U.S. 864, 95 S.Ct. 119, 42 L.Ed.2d 100 (1974).

The defendants contend that they have a right to personally interview the witness to determine his willingness to be interviewed. In support of their position, they rely on *People v. Paskowitz,* 151 Misc. 171, 270 N.Y.S. 799 (1934) which held that a witness' willingness to be interviewed is a matter upon which the witness should be permitted to speak for himself. However, neither *Paskowitz* nor any case cited to this Court requires that the witness must indicate his willingness at a hearing at which he is confronted by defense counsel. The Court sees no reason why a written indication would be inadequate.

The defendants also contend that it is improper for the prosecution to act as conduit for defense counsel's request. The Court is persuaded by defense counsel on this point. Accordingly, the Court will act as conduit for the defendants' request.

Therefore, defense counsel may file with the Court any request they would like to be forwarded to witnesses in the protective custody of the United States Marshal's Service with regard to their willingness to be interviewed prior to trial by defense counsel. The Court will then direct the Marshal's Service to forward these requests to the potential witnesses. Thus, the motion of the defendants to produce witnesses at a hearing to determine their willingness to be interviewed is denied.

## XIII. THE DEFENDANTS MAY HAVE LIMITED ACCESS TO THE GRAND JURY QUALIFICATION QUESTIONNAIRES.

The defendants seek access to the following information:

1. the names and addresses and occupations of the members of the October 13, 1974, and April 3, 1978 grand juries;

2. juror qualification questionnaires filled out by members of those juries;

3. the opening remarks of the United States Attorney or his assistants, or of a judge before those grand juries;

4. the closing remarks of the United States Attorney or of a judge before those grand juries;

5. documentation of the dates the grand juries heard testimony; and

6. documentation of the dates the grand juries were discharged.

Although the October 13, 1974 grand jury heard testimony with regard to this case, it did not indict the defendants. Therefore, the Court finds that the information the defendants seek with regard to that grand jury is irrelevant to this case, and their request to that extent will be denied.

With respect to the grand jury which did indict the defendants, the Court will permit the defendants to have access to all materials they have requested which are relevant to any challenge they may desire to make to the selection process of the grand jurors.

The defendants seek the names, addresses, and occupations of the members of the grand jury. The government contends that the defendants should be permitted access only to the master list from which the grand jurors were drawn.

The Court finds that the process by which the grand jury itself was chosen from the panel could be subject to a legal challenge. *See Collins v. Walker,* 329 F.2d 100, 105 (5th Cir.) *cert. denied,* 379 U.S. 901, 85 S.Ct. 189, 13 L.Ed.2d 175 (1964). However, the Court sees no reason why the defendants need the names and addresses of the members of the grand jury which indicted them. All that would be necessary would be the demographic data upon which a challenge could be made. Accordingly, the Court will have the Clerk's office turn over relevant information about the makeup of the grand jury which indicted the defendants. Although the government has indicated its willingness to turn over the information on the panel from which the jurors were chosen, the defendants have not requested that information. Accordingly, the Court will not order the Clerk's office to turn over that information. The Court is

somewhat perplexed by this omission by the defendants because the defendants will have some difficulty in raising a challenge to the composition of the grand jury without knowing the composition of the panel from which the grand jury was chosen.

The defendants also seek transcripts of the opening and closing remarks of the prosecutors before the grand juries. There is a strong presumption of regularity in grand jury proceedings. *See United States v. Winchester*, 407 F.Supp. 261, 277 (D.Del.1975). The defendants have not raised any challenge which rebuts that presumption. Accordingly, the defendants' request for transcripts of the grand jury proceedings will be denied. However, the Court will examine the transcripts of those proceedings and disclose any wrongdoing to the parties as previously indicated. See page 78 *supra*.

The defendants also seek documents setting forth the dates on which the grand jury heard testimony in order to "discover whether in fact that grand jury actually heard *any* testimony prior to returning an indictment." Defendants' Reply Brief on Motion for Inspection, Reproduction and Copying of Records and Papers in the Custody of the Clerk of the Court, at 4 (April 3, 1979) (emphasis in original). The Court will keep the defendants' concern in mind as it examines the transcript of the grand jury proceedings.

The defendants also seek access to the date upon which the grand jury completed its term. Neither the Court nor the government has any objection to the release of this information.

## XIV. THE DEFENDANTS ARE ENTITLED TO SOME DISCOVERY.

The defendants have made a motion for discovery. The government has resisted the defendants' request on detailed grounds that the defendants separate into five categories.

The government has refused to disclose any items which are undiscoverable, irrelevant, or immaterial. The defendants seek such information as data concerning the grand jury which indicted the defendants and the history of the government's relations with the Church of Scientology. The Court finds that these requests are plainly outside the scope of Federal Rule of Criminal Procedure 16.

The government has refused to disclose Jencks Act material, 18 U.S.C. § 3500, until the time it is required by statute to do so. During the informal phase of discovery, the government agreed to provide Jencks Act material a reasonable time in advance of trial. It is this Court's standard practice to add the precatory wish that the government turn over all Jencks Act material within ten days of the date of the trial. However, in view of the government's earlier representations, the Court shall require the government to fulfill its promise. Accordingly, the government shall be required to turn over all Jencks Act material within ten days of the trial of this case.

The government has resisted producing some material because it has already provided it to some defendants. The Court finds that the material should be made available to the entire defense team, except as otherwise indicated at the hearing on February 21, 1979.

The government has agreed to make some material available but has not yet done so. The Court will in its order establish a timetable for requiring the government to hand over discoverable material.

## XV. THE DEFENDANTS AND COUNTS ARE PROPERLY JOINED.

The defendants have filed numerous motions to sever counts and defendants. The general purpose behind the rules governing joinder are to promote efficiency and economy and to avoid a multiplicity of trials when these objectives can be fulfilled without substantial prejudice to the accused's right to a fair trial. *Bruton v. United States*, 391 U.S. 123, 131 n. 6, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The district court possesses great discretion with

respect to the grant or denial of a severance. *United States v. Leonard*, 161 U.S. App.D.C. 36, 46, 494 F.2d 955, 965 (1974). There is a strong federal policy favoring joinder and the balance has been approvingly struck in favor of joint trials. *Id.*

The joinder of defendants and offenses for a single trial is governed by Rules 8(b) and 14 of the Federal Rules of Criminal Procedure. *Cupo v. United States*, 123 U.S. App.D.C. 324, 326, 359 F.2d 990, 992 (D.C. Cir.1966), *cert. denied,* 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967); *see Bruton v. United States*, 391 U.S. at 131 n. 6, 88 S.Ct. 1620. Rule 8(b) provides that joinder is proper if the defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 14 provides for relief from prejudicial joinder of offenses or defendants.

■■■■ The Court finds that the offenses charged in the indictment in this case allege the same series of acts or transactions within the requirements of Rule 8(b). The predominant factor in the analysis of a joinder problem is the commonality of proof. *Baker v. United States*, 131 U.S. App.D.C. 7, 20–21, 401 F.2d 958, 971–72 (1978) (per curiam), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). Thus, when there is a substantial degree of overlap in the evidence that will be adduced to prove the separate charges, the various allegations may be joined. *Id.*

■■■ The defendants contend that the conspiracy charged in Count One of the indictment and its substantive offenses must be severed from the conspiracy charged in Count Twenty-three and its substantive offenses. The first conspiracy allegedly had as its objective the collection of data by illegal means, and the second a cover-up of these activities. The joinder of two such offenses has been termed a "classical example" of a proper joinder. *King v. United States*, 355 F.2d 700, 704 (1st Cir. 1966) *citing United States v. Perlstein*, 120 F.2d 276 (3d Cir.), *rev'd on other grounds, second convictions aff'd*, 126 F.2d 789, *cert. denied*, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed.

1752 ,(1942). The Court finds that these allegations constitute a common series of transactions joinable under Rule 8(b).

■■■■ The defendants also move to sever the perjury Counts Twenty-five through Twenty-eight, from the remainder of the indictment. The Court finds that these charges are so intimately connected with the second conspiracy charge that severance is uncalled for. Even if there were a separate trial on the Count Twenty-three conspiracy, the perjury charges would be admissible since the alleged perjury would be material and relevant to the charge of conspiracy to avoid detection. *See United States v. Sweig*, 316 F.Supp. 1148, 1158 (S.D.N.Y.1970), *aff'd* 441 F.2d 114, 118–19 (2d Cir.), *cert. denied,* 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971). And it would be admissible in a trial on the Count One conspiracy because it would be a false exculpatory statement. *Id.* Thus, there is the technical nexus required by Rule 8(b). *Id. See also United States v. Mitchell*, 372 F.Supp. 1239, 1256 (S.D.N.Y.1973); *United States v. Hilliard*, 436 F.Supp. 66, 75 (S.D.N.Y.1977).

■■■ In this case, the indictment charges the defendants with a multifaceted scheme with a consistent, logically interlocked set of goals, in furtherance of which overlapping groups of the defendants allegedly formed two conspiracies and committed substantive offenses. Accordingly, the indictment properly joins a series of acts or transactions within the meaning of Rule 8(b).

■■■■ Under Rule 14 the Court must sever defendants and counts joinable under Rule 8(b) is prejudicial. At this time the Court finds that the defendants' right to a fair trial will not be substantially interfered with by trying this case as presently joined. Since the evidence as to each count and defendant would be admissible at separate trials, there would be no prejudice. *See United States v. Kim*, 193 U.S.App.D.C. 370, at 385–386, 595 F.2d 755, at 770–771 (D.C.Cir. 1979).

██ Two of the defendants move to sever on the ground that there would be prejudicial spillover if they were tried with the other alleged conspirators because there is a disparity of evidence as to their respective involvement in the two conspiracies. The defendants rely on *United States v. Mardian*, 178 U.S.App.D.C. 207, 546 F.2d 973 (1976) and *United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966). The Court finds these cases to be distinguishable. In *Mardian*, the government consented to the severance: the defendant made a strong showing of prejudice at the pretrial stage, he was named in only one count, only five of forty-five overt acts named him, a substantial part of the evidence at trial would concern events after Mardian ceased active participation, and his attorney became ill in the midst of trial. 546 F.2d at 979–80. In *Kelly*, the proof supporting the defendant's participation in the over-all conspiracy was tenuous and insubstantial. 349 F.2d at 756. In this case, the defendant Hubbard is alleged to be a prime participant in the second conspiracy and has a significant role in the first conspiracy. And the Court has no evidence before it to indicate that the evidence against Hubbard or Thomas will be tenuous or insubstantial. Although the defendant Thomas is charged with a smaller role, safeguards are available to prevent substantial spillover. *See Kelly v. United States, supra* at 756–57.

The defendants also move to sever under *United States v. Yates*, 173 U.S.App.D.C. 308, 524 F.2d 1282 (1975) (per curiam). In *Yates*, the defendant took the stand and raised an alibi defense which consisted of a claim that he was with his companion Jones when the robbery he was charged with occurred. *Id.* 173 U.S.App.D.C. at 310, 524 F.2d at 1284. In rebuttal, a police officer took the stand and testified that after he placed the defendant and Jones into custody, and while they were being taken to the scene of the crime, Jones remarked that he had been with the defendant for only five minutes. *Id.* At trial, Jones invoked the fifth amendment and declined to testify. *Id.* The trial court allowed the officer's

testimony under the rationale that the defendant's silence in the face of that accusation indicated his assent to its accuracy. *Id.*, 173 U.S.App.D.C. at 311, 524 F.2d at 1285. The court of appeals rejected this basis because the defendant was at the time a prime suspect, in custody, in a police car, and in the presence of two policemen. Thus, it was not natural to assume that he would contradict the statement if it were inaccurate. *Id.* Moreover, the Court found that implying assent to an accusatory statement by silence in a custodial situation was at odds with the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *United States v. Yates*, 173 U.S.App.D.C. at 311, 524 F.2d at 1285. After deciding that the statement was not admissible under the rationale of the lower court, the court faced the sixth amendment issue. *Id.*

The Court in *Yates* held that the admission of the statement violated the defendant's rights under the sixth amendment to confront the witnesses against him. In reaching this determination, the court listed three criteria which, if satisfied, would make the admission of an out-of-court statement by an unavailable declarant permissible under the sixth amendment. *Id.*, 173 U.S.App.D.C. at 312, 524 F.2d at 1286. The Court did not rule that each of the three criteria listed was necessary in order to admit such a statement. According to the court, such statements are admissible "*at least* when three conditions are satisfied . . . .." *Id.*, 173 U.S.App.D.C. at 313, 524 F.2d at 1286 (emphasis added). And the court stated, "[a]dmittedly, the precise contours of these three requirements are not free from doubt, nor is it certain whether all three must be satisfied in every case." *Id.* (citation omitted).

The three factors the court in *Yates* focused on to decide that case were: (1) the reliability of the statement; (2) whether the evidence was peripheral or devastating; and (3) whether the witness is equally available to the prosecution and the defense. *Id.* On the facts before it, the court found that the evidence was unreliable: "Clearly,

grave doubts exist as to the sincerity of the self-serving statement," *id.*, it found that it was far from peripheral, and that the government could have granted Jones immunity to make him available to the defense. *Id.*

The defendants contend that the government is going to admit documents which implicate the defendants as admissions of co-conspirators in furtherance of the conspiracy under Rule 801(c). Since it is possible that the declarant-co-defendant will not take the stand at trial, the defendants will be faced with incriminating out-of-court declarations without the right of cross-examination. According to the defendants, these statements will not be peripheral and the witness would be available to the government through the granting of immunity. Therefore, the defendants contend that the government must choose between not offering these incriminating documents into evidence or severing the trial of defendants so that they may have the possibility of calling the declarants as witnesses.

The Court finds that *Yates* is distinguishable from this case. First, the court in that case had before it a statement of questionable reliability. In this case, the documents the government plans to introduce at trial are grounded on the presumed reliability of admissions against penal interest. And it is "the mission of the Confrontation Clause . . . to advance a practical concern for the accuracy of the truth-determining process in criminal trials . . . ." *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970). Thus, the reliability of the out-of-court declarations are of prime importance.

Second, the Court in *Yates* declined to address the question of whether the statement could be admitted under "any of the evolving, amorphous exceptions to the hearsay rule" but did first confront the question whether it was admissible as a failure to deny an accusation. 173 U.S.App.D.C. at 312, 524 F.2d at 1285. In this case, evidence would be admissible under a long-recognized rule of evidence. Under the Federal Rules of Evidence, admissions of a co-con-

spirator are not exceptions to the hearsay rule, but are simply not hearsay at all. Rule 801(d)(2)(E). Although the fact that evidence is admissible does not mean it does not violate the confrontation clause, *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the admissibility of evidence under a rule of evidence is a factor that is material to the court's determination. *See Bruton v. United States*, 391 U.S. 123, 128 n. 3, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Dutton v. Evans*, 400 U.S. 74, 85–89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

Third, in *Yates* the court observed that the declarant was equally available to the government and the defendant because the government could have given him immunity from prosecution. In *Yates*, the declarant was not being prosecuted. 173 U.S.App. D.C. at 311, 524 F.2d at 1284. In this case, granting immunity would foreclose prosecution of those defendants. Furthermore, there is no indication on the part of the defendants or any proffer of exculpatory evidence which would be available if the co-conspirators were called. If such a showing were made, it would decrease the reliability of the proposed evidence and favor severance. Moreover, there is no indication that severance would be an acceptable remedy. Even if the defendants were tried separately, they would still have their fifth amendment privilege.

Fourth, *Yates* included in its consideration the fact that the evidence was peripheral. *United States v. Yates*, 173 U.S.App. D.C. at 311, 524 F.2d at 1286. Other courts have not tended to treat that requirement with very much weight. *See United States v. King*, 552 F.2d 833, 846 n. 16 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). When there is substantial independent evidence to support the government's case this requirement is held to be satisfied. *See United States v. Scholle*, 553 F.2d 1109, 1120 (8th Cir. 1977), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1978). At this time the Court, of course, is completely unable to determine how devastating the evidence will be; thus,

this factor can have little bearing on a pretrial determination in a case of this kind.

Fifth, other courts have focused on factors not discussed in *Yates*, which support the admission of the documents in this case. In *United States v. Leonard*, 161 U.S.App. D.C. 36, 494 F.2d 955 (1974) the court of appeals for this circuit suggested many factors which would be relevant to determine whether statements violated the confrontation clause. These factors included considerations which are present in this case: the co-conspirator allegedly had personal knowledge of the identity and role of the other participants, the jury will be able to weigh the credibility of the extra-judicial statements, the possibility that the statement was founded on faulty recollection was remote, and the statement was against the declarant's penal interest. *Id.*, 161 U.S. App.D.C. at 50–51, 494 F.2d at 969–70.

Accordingly, under the facts of this case, the Court finds that under the case-by-case approach required by the Supreme Court's plurality in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the defendant's constitutional right to confront the witnesses against them would not be violated by the introduction of reliable out-of-court declarations which satisfy the requirements of Rule 801(d)(2)(E). The Court recognizes that its duty under Rule 14 is a continuing one and that at present the contours of the evidence and prejudice has not yet been solidified. *See United States v. Hilliard*, 436 F.Supp. at 75–76.

An order in accordance with the foregoing shall be issued of even date herewith.